### GARDNER v. GARDNER.

1. FAMILY ARRANGEMENT—THE FINDING OF FACT by the Circuit Judge, that there was no family arrangement by which the mortgage to the widow could be foreclosed without opposition, and that she should devise the property of her husband as nearly as possible as her husband had done, *reversed.*

2. TRUST DEED—LEGACY—AGREEMENT TO DEVISE.—Where a party agrees, for sufficient consideration, to pay a certain sum, or to provide for it in her will, she cannot afterwards defeat such arrangement by making a voluntary trust deed. Following *Fogle* v. *St. Michael's Church*, 48 S. C., 86.

Before WITHERSPOON, J., Richland, November, 1895. Reversed.

Action by Samuel A. Gardner and Elizabeth A. Wolfe against Elizabeth Gardner, A. E. Geiger, E. A. Gardner, Alice Gardner, Elizabeth Gardner, the younger, Lula Gardner, Elizabeth B. Geiger, and B. Frank Gardner, in his own right and as trustee, to set aside a trust deed.

The cause was referred to Jos. W. Muller, Esq., who heard all the issues, and made the following report:

To the Honorable the presiding Judge Fifth Circuit Court aforesaid: I, the undersigned, special referee, respectfully beg leave to report as follows: That, pursuant to an order of the Court herein, referring it to me to hear and determine all the issues in the above cause, and to report my findings of fact and conclusions of law to this Court, I held references from time to time and took the testimony, which is herewith filed. The testimony is very conflicting, and I have given it the most earnest and careful consideration. It seems that on the 15th day of September, 1873, Samuel Gardner duly made and executed his will. During his lifetime, to wit: on the 14th day of June, 1879, he executed to the defendant, Elizabeth Gardner, his wife, his bond in the penal sum of $31,680, conditioned to pay one year after date, the sum of $15,840, and to secure the payment thereof, he executed a mortgage on all his real estate. Mr. Gardner died

in 1883, and shortly thereafter the said mortgage was fore-
closed, and the property covered thereby was purchased by
Elizabeth Gardner, who went into possession thereof.   On
the 15th of December, 1888, Elizabeth Gardner, for the
consideration of $5, executed to her son, B. Frank Gardner,
a deed of the premises in trust, to hold the same for certain
uses and purposes.   Provision was made in this trust deed
for all of the beneficiaries named in the will of Samuel
Gardner, except the plaintiffs.   Plaintiffs contend that after
the death of the said Samuel, his family, the said beneficia-
ries under his said will, including his wife, the said Eliza-
beth, met in council, and then and there made an agreement
for settlement of said estate, by which it was mutually
agreed that the said Elizabeth should use the said mortgage
for the purpose of settlement, and should at once proceed
to foreclose the same through the courts, and the children,
the beneficiaries, would remain silent and permit the same;
that she, the said Elizabeth, would buy in the said property
under said mortgage, take the title in her own name for
convenience, raise sufficient money to pay off the debts of
the said Samuel; and that the rents and profits thereof should
be first applied to the payment of the taxes, insurance, inter-
est, and repairs, and the remainder of said rents and profits
should go to the support and maintenance of the said Eliza-
beth during her life, and after her death the said property, or
what remained thereof after the payment of the debts, should
be distributed·to the persons named and in the proportions
stated in the will of the said Samuel; and to that end that
the said Elizabeth should make a will.   Plaintiffs also con-
tend that it was in pursuance of this agreement that the
said Elizabeth was permitted to foreclose said mortgage and
buy in said property.   And that the said trust deed from
Elizabeth to B. Frank Gardner was obtained by false and
fraudulent representations and undue influence.   Elizabeth
did, on the 17th February, 1886, make her will, in which
she seems to have tried to dispose of the property as nearly
as possible as her husband, Samuel, had done in his will.

The real contention of the plaintiffs, then, is, that by virtue of the contract or family settlement set up in the complaint, a trust, whether resulting or constructive, attached to the premises described in the complaint (whether in the hands of Elizabeth Gardner or in the hands of grantees) in favor of the plaintiffs, the terms of the trust being declared in said contract or family settlement. If it be true that the alleged family settlement was made, it follows that Mrs. Elizabeth Gardner had no right to make the trust deed, and it should be cancelled and set aside.

Under all the authorities which I have examined, it seems that the evidence necessary to establish such a trust must be "Clear and unequivocal." "Clear, full, and satisfactory." "Clear and certain." "Strong and very clear." 2 Pom. Eq. Jurs., p. 633, sec. 1058; 10 Am. & Eng. Enc. Law, pp. 29, 49, 84, and notes. Has the alleged family settlement been proved by evidence of the character required? There can be no doubt, that shortly after the death of Samuel Gardner, all of his family, or most of them, at least, met in Mrs Gardner's parlor, in Columbia, whether for the simple purpose of hearing his will read or, as the witness, Mr. Crawford, says, "for the purpose of settling the estate of Samuel Gardner, and the further purpose of foreclosing this mortgage," is immaterial. At that meeting both the will and the mortgage were produced, but as to what was done and said, there is considerable conflict of testimony. Even the witnesses for the plaintiffs do not agree as to what the agreement or settlement was. Samuel Gardner says, his mother "was to make a will, and will the property, as near as she could, as my father had willed it;" while Mr. Crawford says that the understanding reached was, "that the property should be held by Mrs. Gardner for her use during her natural life, with remainder to *her children*, *share and share alike*, that is my recollection." So that, even if I reached the conclusion that there was a family settlement, binding upon all of the family, it would be difficult, if not impossible, to find what the agreement act-

ually was, and who are entitled to the property.   I do not think, however, that the evidence is sufficient to warrant me in finding that there was a family settlement.   The fact that there was some opposition to the foreclosure of the mortgage, and that that opposition was withdrawn, is not, in my judgment, enough.   The *bona fides*, the consideration of the mortgage, may have been questioned.   This was but natural, for it covered all the Samuel Gardner real estate, and was for an amount almost equal to the value of the property.

I do not understand Mr. Crawford, who was Mrs. Gardner's attorney, to say that any binding contract was made, but that an "understanding" was reached.   He says further: — "Whether that division was provided for by her last will and testament, I cannot say, but think it was; be that as it may, the old lady got after me several times to draw her last will and testament, but it was drawn in my absence by Mr. Shand, and that last will and testament is now a fact.   The contents I cannot swear to."   Now, surely, if such a contract or family settlement was made, as plaintiff contended for, affecting, as it did, an estate worth about $20,000, Mr. Crawford would have reduced it to writing, and would have immediately drawn and executed Mrs. Gardner's will, carrying out that agreement, and not have waited for her to "get after him" several times to draw it. Would not the other members of the family have *insisted upon having the agreement put in writing?*   It seems most reasonable to infer, from Mr. Crawford's course, that he considered the alleged contract only an understanding, a family expectation, not binding or obligatory.   Again, it is hard to understand how Mr. Crawford would permit Mrs. Gardner·to make any such contract.   He certainly considered her mortgage a valid and subsisting lien on the property.   He testifies that the consideration of the mortgage was the debt that Mr. Samuel Gardner was owing his wife, growing out of the use of her money and other property obtained as his wife's distributive share in her father's estate.

5—49

True, the evidence shows that she came into possession of this property prior to 1868, at which time the law was, that all the personal property of the wife reduced by the husband to possession during coverture became the absolute property of the husband, and liable for his debts; yet it is equally true, the husband could make a gift to the wife. Counsel for the plaintiffs argue that Mr. Gardner could not have intended a gift to his wife, because she says, "my husband made a mortgage of the property to me. * * * He made the mortgage for me as long as I lived." But she says, also, "of course, it was my money—all the property was left in my charge; I suppose it was my property—don't know whose it is." These and other inconsistencies in the old lady's testimony can easily be accounted for when it is remembered thai she was seventy-four years of age when she gave her testimony, and admitted herself that her memory was poor. If Mr. Gardner only intended to give his wife a life estate in the property, a mortgage, absolute on its face and payable one year after date, was a most singular method of effecting his purpose. It seems to me far more reasonable that he intended to do just what he did, leave to her the money which he said he owed to her morally. Mr. Crawford says Mr. Gardner told him "that he felt that, inasmuch as he had used the money of the old lady, he ought to make this mortgage to her of the principal and interest." Again, Mrs. Gardner says: "I did not promise to make a will and leave the property in same proportions as contained in the will of Samuel Gardner. I did not make the will on account of any agreement had with my children." B. Frank Gardner, Mrs. Ann E. Geiger, and Dr. J. W. Geiger all swear positively that there was no agreement. So that, of all those that were present at that family council, Samuel A. Gardner is the only one who swears that there was an agreement. But counsel for plaintiff argues that there were corroborating circumstances; that the mortgage was foreclosed, and the property bid in by Elizabeth Gardner, without opposition on the part of the family; that

the estate of Samuel Gardner was settled up in the foreclosure suit; and that Elizabeth Gardner did make her will, disposing of the property as nearly as practicable as Samuel had done in his will.

All of these circumstances fail to convince my mind. As the Pollard mortgage, Mrs. Gardner's mortgage, and the other debts against the estate would about exhaust the entire property, there was no incentive to any other member of the family to bid on the property.    Mrs. Gardner's mortgage, if valid, and the other debts of Samuel Gardner, had to be paid, and I cannot see any significance in the fact that the estate of Samuel Gardner was settled up in the foreclosure suit.    It was but natural for Mrs. Gardner, then a very old lady, to make her will; and equally natural for her to dispose of the property as her husband had done.    Besides, there are circumstances which tend to corroborate the defendants' testimony.    From the time Mrs. Gardner purchased the property at the foreclosure sale up to the time of the trust deed, she dealt with the property as her own absolute property—selling a portion and mortgaging a portion, and using the money in part for her own purposes.    I cannot believe that Mrs. Gardner would have violated the family agreement, if there had been one, and committed a breach of trust.    Again, when Samuel A. Gardner learned of the trust deed, he complained of his mother's treatment of him; but, as Mr. Seibels says, never disputed the right of his mother to dispose of the property as she pleased,    I have only discussed what to my mind are the most salient portions of the testimony, but have weighed carefully all of it, and find, as matter of fact, that there was no contract or family agreement entered into, as alleged in the complaint; that Mrs. Elizabeth Gardner, at the time she made the trust deed, owned the property in question in her own right, having purchased the same at the foreclosure sale.

I further find, as matter of fact, that there was no fraud or deception practiced upon Mrs. Elizabeth Gardner, as alleged in the eighth paragraph of the complaint.    It fol-

lows, as matter of law, that the plaintiffs are not entitled to the relief sought, and that the complaint should be dismissed.

The Circuit Judge confirmed this report, and the plaintiffs appeal.

*Mr. Allen J. Green*, for appellant, cites: 77 Mass., 506; 19 S. C., 591; 32 S. C., 263; 19 S. E. R., 685; 3 Rich. Eq., 423; Harp. Eq., 212.

*Messrs. Melton & Melton*, contra.

March 31, 1897. The opinion of the Court was delivered by

MR. CHIEF JUSTICE McIVER. On the          day of March, 1883, Samuel Gardner, having first duly made and executed his last will and testament, departed this life, leaving his widow, the defendant, Elizabeth Gardner, and his children, Samuel A. Gardner, one of the plaintiffs herein, B. Frank Gardner, Elizabeth B. Geiger, A. E. Geiger, E. A. Gardner, and Alice Gardner, defendants herein, and another son, William, who has since died, leaving two children, Elizabeth and Lula, who are likewise defendants herein, and his grand-daughter, Elizabeth C. Wolfe, the only child of a predeceased son, John, the other plaintiff herein. The will of the testator was duly admitted to probate, but his executors named therein declined to qualify, and subsequently administration with the will annexed was duly committed to the said S. A. Gardner and B. Frank Gardner. The testator left a small personal estate of inconsiderable value and real estate of the estimated value of $20,000, all of which was disposed of by his will. This will was executed on the 15th of September, 1873, and about six years thereafter, to wit: on the 24th of June, 1879, the testator, the said Samuel Gardner, executed a mortgage, covering all of his real estate, to his wife, the defendant, Elizabeth Gardner, to secure the payment, one year after said date, of the sum of $15,840. Soon after the death of the testator, and within twelve months after the date of that event, an ac-

tion was commenced by the said Elizabeth Gardner for foreclosure of this mortgage, to which action, as we assume, all the heirs and devisees of the said Samuel Gardner were made parties, and there being no defense interposed, judgment of foreclosure was obtained by default, and under that judgment the property covered by the mortgage was bid off by the said Elizabeth Gardner for the sum of $16,000, who took titles, went into possession, sold off some of the property, made mortgages thereon for the purpose, as it seems, of paying off the debts of the said Samuel Gardner, due by him on his own account, the principal of which was a debt to one Pollard, amounting to some $4,500. There was also another claim for a large amount against the estate of Samuel Gardner, as surety on a note under seal, dated as far back as 1859, upon which sundry payments had been made, from time to time, down to the 27th of April, 1865, upon which an action was commenced on the 29th January, 1884, against the administrators and heirs at law of the said Samuel Gardner in the nature of a creditor's bill. The said estate was, however, relieved from the payment of this claim by the judgment of this Court, rendered 27th of November, 1885, as appears by the case of Gardner *v.* Gardner, 23 S. C., 588.

On the 17th of February, 1886, after the estate of Samuel Gardner had been relieved from liability for the surety debt above mentioned, the said Elizabeth Gardner duly made and executed her last will and testament, whereby she undertook to dispose of what was left of the real estate, which she bought under her mortgage as above mentioned, as nearly as practicable as her husband had done in his will, and, since the commencement of this action, she has died leaving her will in full force. In her will she leaves a legacy of $500 to her grand-daughter, Elizabeth Wolfe, one of the plaintiffs herein, reciting that a legacy of the same amount had been left to her by the will of her husband, which had never been paid, and then, after making a special provision for her daughter, Alice, she divides the balance

of her estate equally amonst her children named, of whom
the plaintiff, Samuel A. Gardner, is one.   Afterwards, to
wit: on the 15th of December, 1888, the said Elizabeth
made a voluntary deed to her son, B. Frank Gardner, of all
her remaining real estate (a portion of it having been pre-
viously conveyed to her daughter, Alice,) upon the following
trusts: 1st, to apply the income arising from the rents and
profits of said property to pay two specified mortgage debts,
together with the taxes and insurance; 2d, to pay the bal-
ance to her, the said Elizabeth Gardner, for and during the
term of her natural life; 3d, at her death to divide the pro-
perty and whatever income may be on hand equally amongst
the following named of her children, viz: A. E. Geiger, E.
A. Geiger, and B. F. Gardner, and her grand-children, Eliza-
beth and Lula Gardner, who together are to take one share.

The foregoing facts are, as we understand it, undisputed,
and we, therefore, proceed to the consideration of such other
facts, material to the issue, as to which there is dispute. It
is contended on behalf of the plaintiffs that after Samuel
Gardner had made his will, providing for his wife and all
of his children, and bequeathing a legacy of $500 to his
grand-daughter, Elizabeth Wolfe, one of the plaintiffs herein,
he learned that he was threatened with a large debt of
surety for one Geiger, and casting about for the means of
protecting himself and his estate from the payment of this
debt of another, he bethought himself of the fact that he
had, anterior to the war, received a considerable amount
of personal property, to which his wife was entitled, under
the will of her father, and conceiving that he was, at least,
*morally* bound, as the testimony shows that he said, to
make good to his wife the value of this property which he
had received and appropriated to his own use; and, accord-
ingly, he determined to execute, and did execute, the mort-
gage to his wife, above spoken of; that shortly after his
death there was a meeting of all or most of the family at
the late residence of the said Samuel Gardner, when his
will was read, and the said mortgage was produced, of

which, up to that time, some, if not all, of the children had
never heard; that objection being made to the mortgage
upon the ground that the debt which it purported to secure
was without any legal or valid consideration, after some
discussion, it was agreed that all opposition to the mortgage
should be withdrawn, and that the said Elizabeth Gardner
should be allowed to foreclose the mortgage, buy the pro-
perty, take titles in her own name, and after paying off the
debts of said Samuel Gardner, she should be entitled to the
use and enjoyment of the property during her life, and after
her death that the property should be diposed of as pro-
vided in the will of said Samuel Gardner, and to that end
the said Elizabeth Gardner should make her will, and that
accordingly she did execute her will, under which the
plaintiffs claim the property should now be disposed of.
The plaintiffs further contend that the deed of trust above
spoken of was obtained by fraud, or, at least, was executed
by the said Elizabeth Gardner under the mistaken belief
that she was simply placing the property in the hands of
B. Frank Gardner, to be managed by him, instead of by
Samuel A. Gardner, as it had theretofore been, and that
she had no idea that, by executing said deed, she was de-
priving the plaintiffs of all right to share in the property,
and if she had known that such was the effect of the deed,
she never would have executed it.   These contentions on
the part of the plaintiffs are stoutly contested by the de-
fendants, and there is no doubt that the testimony was con-
flicting.   The referee to whom it was referred to hear and
determine all the issues in the above cause made his report,
in which he finds, as matter of fact, that there was no such
family agreement or settlement as that contended for by
the plaintiffs; and that there was no fraud or deception
practised upon the said Elizabeth Gardner in obtaining the
trust deed, as alleged by plaintiffs.   And he, therefore, finds,
as matter of law, that the complaint should be dismissed.

To this report plaintiffs excepted, and the case was heard
upon the report and exceptions by his Honor, Judge With-

erspoon, who, in a short order, confirmed the report and rendered judgment that the complaint be dismissed.

From this judgment the plaintiffs appeal, upon the several grounds set out in the record, which, under the view we take, need not be stated here. Inasmuch as the Circuit Judge simply confirmed the report of the referee, without any discussion of the questions in the case, we are compelled to devote our attention to the views presented by the referee in his report, which, as we assume, were adopted by the Circuit Judge. The report should, therefore, be incorporated in the report of this case.

It is very manifest that the controlling question in the case is, whether the evidence was sufficient to establish such a family agreement as that contended for by the plaintiff; for, if such agreement is established, it is conceded, and properly conceded, by the counsel for respondents, that the plaintiffs are entitled to the relief demanded in their complaint. There can be no doubt that, shortly after the death of Samuel Gardner, a family council was held. The testimony is most abundant to that effect, and the referee so finds, for he says: "There can be no doubt that, shortly after the death of Samuel Gardner, all of his family, or most of them, at least, met in Mrs. Gardner's parlor in Columbia, whether for the simple purpose of hearing his will read, or, as the witness, Mr. Crawford, says, 'for the purpose of settling the estate of Samuel Gardner, and the further purpose of foreclosing this mortgage,' is immaterial." It may not be amiss here to note that the referee is mistaken in giving the language quoted from Mr. Crawford's testimony, as his statement of the purpose of the family meeting. That language was used by Mr. Crawford, as the "Case" shows, in answer to an inquiry as to the appointment of the administrators with the will annexed, where he says: "That appointment was obtained for the purpose of settling the estate of Mr. Samuel Gardner, and for the further purpose of foreclosing this mortgage." What Mr. Crawford did really say as to the purpose of the meeting was this: "We assem-

bled there—that is, I and Mrs. Gardner assembled there—
for the purpose of making an arrangement whereby this
mortgage should be foreclosed upon the property described
in the complaint, without opposition on the part of the fa-
mily." There can be no doubt, also, that at this family
meeting there was considerable opposition, on the part of
some of the members of the family, to the foreclosure of the
mortgage, based upon the ground that it was given to delay
and defraud creditors; and there certainly is no doubt that
all such opposition was withdrawn, and that the judgment
of foreclosure was obtained by default. The natural infer-
ence from this is that there must have been some arrange-
ment effected, satisfactory to the family, and what more
natural than that which it is claimed by the plaintiffs was
entered into. While it is true that there is a conflict of tes-
timony as to this matter, it seems to us that it is much more
reasonable to adopt the version of Mr. Crawford, as to what
occurred at that meeting, than that of any other witness, for
several reasons. In the first place, he was wholly disinter-
ested, while the other witnesses were not. In the next
place, he is an intelligent and experienced lawyer, who at
the time seems to have been the trusted legal adviser of all
the parties; and finally, his high character is unquestioned,
and we may add unquestionable. He went to that meet-
ing, as he says, for the purpose of making an arrangement
whereby the mortgage should be foreclosed without opposi-
tion from the family, and it is quite certain that such pur-
pose was effected. Who, then, was more likely to know and
understand how that arrangement was effected, and who
more certain to testify truthfully and intelligently as to
what occurred? Then, too, the subsequent conduct of the
parties reflects light upon, and confirms the view that there
was a family arrangement; for in pursuance of that arrange-
ment, Mrs. Elizabeth Gardner did make her will, providing
for all of her children and giving a legacy to her grand-
daughter, the plaintiff, Elizabeth Wolfe, saying that a simi-
lar legacy of $500 had been given to her by the will of the

said Samuel Gardner, which had not been paid.    More than
that, it is quite certain that Elizabeth Gardner proceeded to
pay up the debts of her husband, just as it was claimed was
provided for in the family arrangement, for which she would
have been in no way liable, if the mortgage to her was a
good and valid security.    The referee seemed to think that,
even if the testimony was sufficient to establish the fact that
there was a family arrangement, that the testimony left it
uncertain what were the terms of such arrangement, inas-
much as the witnesses for the plaintiffs differed as to that
matter, and proceeds to comment upon what he regards as
the conflicting statements of the plaintiff, Samuel A. Gard-
ner, and Mr. Crawford.    This difference, as it strikes us, is
more a matter of form than substance.    Besides, adopting,
as we do, the version of Mr. Crawford, we find no such dif-
ficulty, as we think that the terms of the will of Elizabeth
Gardner carried out, substantially, the terms of the family
arrangement.    Again, when the referee says that he does
not understand Mr. Crawford as testifying "that any binding
contract was made, but that an *understanding* was reached,"
and draws the inference that Mr. Crawford "considered the
alleged contract only an understanding, a family expecta-
tion, not binding or obligatory," we think he totally mis-
understands the testimony.    Mr. Crawford certainly did not
go to that family meeting with the idle purpose of obtaining
a mere "family expectation, not binding or obligatory;" but,
as he says explicitly, his purpose was to make an arrange-
ment for the foreclosure of the mortgage, without opposition
on the part of the family, and that purpose undoubtedly
was effected.  All opposition was withdrawn, in consideration,
as Mr. Crawford testifies, that by the family arrangment,
the children would be provided for.  Call it what you will—
an "understanding," or an "arrangement," or a "contract,"
the testimony undoubtedly shows that there was opposition
to the mortgage on the part of some, at least, of the family;
that such opposition was withdrawn; and that such opposi-
tion was withdrawn in consequence of what occurred at the

family meeting.   Again, when the referee says that he finds
it difficult to understand how Mr. Crawford would permit
his client, Mrs. Gardner, to enter into such an arrangement
as that contended for, as he certainly considered her mort-
gage a valid lien on the property of her deceased husband,
he again betrays an entire misconception of the real situa-
tion.   We cannot for a moment suppose that so good a law-
yer as Mr. Crawford would regard the mortgage valid as
against the claim of creditors, for there certainly was no
valid legal consideration for the so-called debt which the
mortgage purported to secure.   When Samuel Gardner re-
ceived his wife's share of her father's estate, it being per-
sonal property, before the adoption of the Constitution of
1868, under the law as it then stood, his marital rights at-
tached so soon as the property was reduced to possession,
and became as absolutely his property as any other property
which he owned.   While, therefore, there might have been
a *moral* obligation on the part of Samuel Gardner to return
this property or its value to his wife, there certainly was
no *legal* obligation to do so, and hence it could not consti-
tute the foundation of, or the consideration for, any *debt*.
The referee seems to recognize this view, but says that the
husband could make a gift to his wife.   In the first place,
the giving of a mortgage to secure the payment of a so-called
debt is a very unusual way of making a gift.   But what is
more important, Samuel Gardner being largely indebted at
the time, could not make a valid gift to his wife, or any
one else, any more than he could make a mortgage to se-
cure the payment of a debt which rested on no legal con-
sideration.   Whatever doubts may have been entertained
as to the right of the heirs or devisees of Samuel Gardner—
mere volunteers—to resist the foreclosure of a mortgage,
we cannot for a moment suppose that any one acquainted,
in the least degree, with the settled principles of law, would
have doubted the right of creditors to do so.   But we can
well understand how it might have been regarded as a mat-
ter of importance to secure the withdrawal of opposition to

the action for foreclosure from the members of the family; for it is conceded that such action was commenced within twelve months after the death of the testator, and if opposition from the heirs, who were necessary parties, should be withdrawn, judgment of foreclosure could be more speedily obtained and the property sold—perhaps before creditors could put their claims in judgment, as they were forbidden by law to commence their actions before the expiration of the twelve months. Besides, what real injury could come to Elizabeth Gardner? for, by the terms of the family arrangement, she was to enjoy the use of the property during her life, and at her death it would go to those whom she most probably would wish to provide for. After a very careful examination of all the testimony in this case, we cannot resist the conclusion that the family of Samuel Gardner, soon after his death, finding his estate considerably indebted on his own account, and also threatened with a large surety debt, amounting to something like $4,000, the payment of which they desired to avoid, met for the purpose of making some arrangement for the settlement of the estate in such a way as would protect it from the payment of such surety debt, and that it was then agreed that the best mode of effecting such purpose was to allow the mortgage to Elizabeth Gardner, which had been questioned, and certainly was questionable, to be promptly foreclosed, the property sold, and bought in by Elizabeth Gardner, under her mortgage, and the property applied first to the payment of such debts of Samuel Gardner as were contracted on his own account, which they were willing should be paid, next to the use of said Elizabeth Gardner for and during her life, with an agreement on her part to dispose of the same at her death just as she has done by her will. It must be concluded, therefore, that the Circuit Judge erred in holding otherwise, and upon this ground the decree should be reversed.

Under this view, it becomes unnecessary to consider the other question—whether there was any fraud or deception practiced upon Elizabeth Gardner in obtaining the trust

deed above mentioned. We may say, however, that we do not think the testimony warrants the conclusion that there was any such fraud and deception, though it does tend to show that she executed the trust deed under the mistaken idea that its purpose was simply to transfer the management of the property from Samuel A. Gardner to B. Frank Gardner, and not with any idea that its effect would be to deprive the plaintiffs of any interest in the property after her death.

If any other conclusion could be reached, it seems to us that there would still remain another question upon which neither the referee nor the Circuit Judge has directly passed, and that is the question as to the rights of the plaintiff, Elizabeth Wolfe. Even if it could be concluded that the testimony was insufficient to establish any such family arrangement as that contended for, yet there was error in dismissing the complaint as to Mrs. Wolfe, as it should be sustained upon another ground. The undisputed testimony is, that Mrs. Wolfe was induced to withdraw her opposition to the action for foreclosure of the mortgage to Elizabeth Gardner, by the assurance from her, through her attorney, given to the attorney of Elizabeth Wolfe, that if she would withdraw her opposition to the action for foreclosure, she, Elizabeth Gardner, would either pay at an early day the legacy of $500 to Elizabeth Wolfe, or provide for it in her will, and as the result of such assurance, her opposition was withdrawn. Mr. Crawford, in his testimony, in speaking of this matter, says: "In his last will and testament Mr. Gardner had left her $500, and I was authorized by Mrs. Elizabeth Gardner to treat with Gen. James F. Izlar, the attorney of Mrs. Wolfe, for the purpose of having him agree to the foreclosure proceedings; the condition being that Mrs. Gardner should either pay at an early day, or leave it in her last will and testament, that the $500 should be turned over to Mrs. Wolfe, her grand-daughter. I saw Gen. Izlar, and made the arrangement with him." Of this testimony no contradiction whatsoever can be found in the testimony, which is fully set out

in the "Case." It must, therefore, be taken as a fact that Mrs. Elizabeth Gardner made a valid agreement, founded on a sufficient consideration, to pay this legacy to Mrs. Wolfe, or to provide for it in her will. There is no pretense that the legacy was ever paid, and, therefore, under the principles laid down in the recent case of *Fogle* v. *St. Michael's Church*, 48 S. C., 86, it must be provided for, before the property can pass under the voluntary trust deed.

The judgment of this Court is, that the judgment of the Circuit Court be reversed, and the case remanded to that Court for such further proceedings as may be necessary to carry out the views herein announced.