## KINNETT v. GOODNO et al.

No. 22902.    Feb. 26, 1935.

Simons, McKnight, Simons, Mitchell & McKnight, for plaintiff in error.

McKeever, Elam, Stewart & McKeever, for defendants in error.

F. M. Gustin, for executor and guardian ad litem.

BUSBY, J.    This is an appeal from a judgment of the district court of Alfalfa county in favor of the defendants in error and against the paintiff in error. The parties appear here as they appeared in the trial court.

This action involves the proper disposition of the property belonging to the estate of William Woolsey, deceased, who died testate. A short history leading up to the transactions out of which grew the issues here involved will materially aid in disposing of the questions presented.

William Woolsey and his wife, Hannah Woolsey, adopted a child named Mary. In after years Mary married Marion Swiger and to them were born Inza Swiger, now Kinnett, the plaintiff herein, Beula Swiger, now Beula Viers, and Erma Swiger, now Erma Goodno, two of the defendants herein. Mary, the mother of these children, died in 1903. William Woolsey and Hannah Woolsey adopted Beula and Erma in 1903, after the death of their mother, but did not adopt Inza. In 1906 William Woolsey executed his will giving all of his personal property to his wife, Hannah Woolsey, and giving her also a life estate in all real estate of which he might die seized and possessed.

The fifth paragraph of the will provided that at the death of Hannah Woolsey the real estate was bequeathed to Beula Vivian Swiger and Mary Erma Swiger, to have and to hold the same, share and share alike, for themselves and the issue of their bodies forever. Neither was to have the right to sell or dispose of the real estate until after the younger had reached the age of 25 years.

To Inza Swiger was willed $100. The will was executed in Oklahoma, where William Woolsey lived and died in 1910. The estate of William Woolsey was administered in Alfalfa county, Okla. The inventory listed only a quarter section of land, described as the northeast quarter of section 32, township 24 north, range 12 west, and will be hereinafter referred to as the northeast quarter.

In 1912 Marion Swiger was appointed guardian for Inza Swiger. The executor of the will filed his final account, and the hearing on same was set for April 1, 1912. On the same day there was filed in the administration case a receipt of Marion Swiger, as guardian of Inza Swiger, for the sum of $100 for Inza Swiger, as provided for in the will. On the day set for hearing the executor's final report and account, the county court rendered its decree settling the final account and ordering distribution of the estate. The decree provided for $100 to be paid to Inza Swiger and a life estate in the northeast quarter to Hannah Woolsey, with remainder over to Mary Erma Swiger and Beula Vivian Swiger, as pro-

vided in the will, and the executor was discharged.

About ten years thereafter, it was discovered that William Woolsey died seized and possessed of additional land described as the southwest quarter of section 34, township 24 north, range 12 west, hereinafter referred to as the southwest quarter, and on April 12, 1922, the executor named in the will, and formerly discharged, was again appointed executor of the will for probating additional property. In August thereafter the executor filed his final account, and on October 3, 1924, he filed a petition for discharge, in which he stated that Hannah Woolsey had elected to take a one-third of the additional land. No further action was taken in the matter until 1928, when the executor filed his petition for distribution, and in February, 1928, the court entered its order distributing the one-third of the remaining land to Hannah Woolsey and one-third each to Beula Viers and Erma Goodno, two of the defendants in error herein.

Shortly prior to her death in October, 1930, Hannah Woolsey made her will, in which she willed Inza Swiger Kinnett, the plaintiff in error, the sum of $200, and willed all of her personal property to Beula Viers and Erma Goodno, and all of her real estate to Beula Viers and Erma Goodno for life with remainder over to their respective issue.

In November, 1930, the plaintiff in error, Inza Swiger Kinnett, filed this suit to recover a one-third interest in both parcels of land. The issues here present three propositions, and we shall attempt to state them separately.

The plaintiff alleges in her petition, in substance, that, at the death of her mother, she was six years of age, Beula Swiger, now Viers, was four, and Erma Swiger, now Goodno, was two years of age; that William and Hannah Woolsey proposed to the father, Marion Swiger, to adopt Beula and Erma, and that in consideration of such permission, the Woolseys agreed that, upon their deaths, they would leave their property in equal shares to the three children; that a written contract to that effect was entered into and that Beula and Erma were adopted by William and Hannah Woolsey; that by the provisions of the wills of both William and Hannah Woolsey, it was attempted to deprive the plaintiff of any interest in the property of William Woolsey in violation of the terms of the contract.

The plaintiff alleges the existence of a constructive trust resulting in favor of the plaintiff and against the defendants in and to the property and all of the same owned by William Woolsey and Hannah Woolsey at the time of their death, and asks for a judgment of the court declaring the defendants to be holding the property as trustees, in so far as the plaintiff's interest is concerned, and that her interest be determined by the court, and that an accounting be had as to her interest in the personal property, and that a judgment be rendered for plaintiff's interest in the property. The plaintiff alleged the loss of the written contract pertaining to the adoption of the children.

The defendants Erma Goodno and Beula Viers filed their answer, admitting their adoption by William and Hannah Woolsey, but deny that any contract for their adoption was ever entered into by William or Hannah Woolsey. They allege that the plaintiff had received and accepted the legacy of $100 provided for in the will of William Woolsey, and that she is estopped from claiming any of the property through any alleged contract, and that the stature of limitations had run against the plaintiff in so far as the final distribution of the estate was concerned. These defendants further contend that Hannah Woolsey received only a life estate in the property of William Woolsey, and that her will is a nullity in so far as it refers to a device of an entire estate, and deny the existence of any trust in favor of the plaintiff, and ask for a judgment finding Erma Goodno and Beula Viers to be the owners of the personal property owned by Hannah Woolsey at the time of her death, and that the court further find and decree that Erma Goodno and Beula Viers are the owners in fee simple of the title in and to both parcels of land of the estate of William Woolsey, in controversy.

A guardian ad litem was appointed for the minor children of Erma Goodno and Beula Viers. He filed his answer in which he adopted most of the defendant's answer, but alleges by way of an amended answer that they have an interest in remainder in the one-third interest of Hannah Woolsey in both quarter sections of land in controversy; that the county court decreed Hannah Woolsey a one-third interest in the southwest quarter, and that she inherited a one-third interest in the northeast quarter by failing to elect to take under the will of William Woolsey. It is contended that

Hannah Woolsey was a forced heir of William Woolsey to the extent that such one-third interest in the fee was not lost by her failure to assert her right thereto during her lifetime. Since, under the eighth paragraph of the will of Hannah Woolsey, her real estate was willed to Beula Viers and Erma Goodno for life and one-half each thereafter to their respective heirs, it is contended that these minors would have an interest in remainder in both quarter sections of land instead of one.

The matter was tried to the court, and the court found against the plaintiff on the ground that she had accepted the bequest of $100 by the terms of the will of William Woolsey and would be estopped to claim the benefit of and the enforcement of a contract.

The court further found and decreed Erma Goodno and Beula Viers to be the owners in fee in the northeast quarter and a two-thirds interest in the southwest quarter and of a life estate in a one-third interest in the southwest quarter.

The court found and decreed that the minor heirs of Erma Goodno and Beula Viers were the owners of the remainder estate in a one-third undivided interest in the southwest quarter. The court found and decreed that all personal property belonging to the estate of Hannah Woolsey, deceased, belonged to Erma Goodno and Beula Viers.

The plaintiff excepted to the findings and judgment of the court, and, a motion for a new trial being overruled, brought this appeal.

All of the defendants excepted to the finding and judgment of the court, but filed no motion for a new trial or cross-appeal.

The plaintiff contends that the trial court erred in finding that the acceptance of the $100 bequest in the William Woolsey will estopped the plaintiff from claiming any part of the estate of William Woolsey and Hannah Woolsey, and also in failing to decree the plaintiff to be the owner of a one-third interest in the two estates.

Before the plaintiff would be entitled to be awarded a one-third interest in the property composing the estates of William Woolsey and Hannah Woolsey, deceased, under a specific performance of a contract, she must clearly show that the contract alleged in her petition had actually been entered into between the parties named, and that she has not forfeited the right to specific performance under the terms of the contract.

In Robinson et al. v. Haynes et al., 147 Okla. 95, 294 P. 803, this court held:

"Whether equity will decree the specific performance of a contract rests in judicial discretion and always depends upon the facts of the particular case. As a rule, when a definite contract to leave property by will has been clearly and certainly established, and there has been performance on the part of the promisee, equity will grant relief, provided the case is free from objection on the ground of inadequacy of consideration and there are no circumstances or conditions which render the claim inequitable.

" 'Before a court of equity will specifically enforce an oral contract to devise property, the proof of the contract must be so cogent, clear and forcible as to leave no reasonable doubt as to its terms and character.' Pancoast v. Eldridge, 134 Okla. 247, 273 P. 255. * * *

"Where an oral contract to devise property is sufficiently proved by cogent, clear, and forcible evidence, and the party seeking to avail himself of the benefits of such contract has rendered complete performance on his part so that the case is removed from the operation of the statute of frauds, equity will specifically enforce the contract after the promisor's death by seizing the property which is the subject-matter of the agreement, and fastening a trust on it in favor of the person to whom the decedent agreed to give it by will. Such agreement is capable of enforcement after the promisor's death as against his estate and his personal representative"

—following the case of Pancoast, Adm'r, v. Eldridge, 134 Okla. 247, 273 P. 255, wherein this court said:

"Before a court of equity will specifically enforce an oral contract to devise property, the proof of the contract must be so cogent, clear, and forcible as to leave no reasonable doubt as to its terms and character. The rule as to the weight to be given evidence in such cases is well stated in 36 Cyc. 692, wherein it is said:

" 'The rules as to the weight of evidence are applied with the utmost strictness to oral contracts to devise the whole or part of an estate. Such contracts are viewed with suspicion by the courts, and must be established by the clearest and most convincing evidence. In these, as in other contracts, one party to which is deceased, the defendant heirs or devisees are under the disadvantage that they are deprived by his death of their most important testimony. In such contracts the proof, in addition to inferences from the situation, circumstances, and relations of the parties, must generally consist of evidence of verbal declarations made by the deceased to third persons. This is a kind of evidence which the law recognizes as weak and unsatisfactory, and to be scrutinized with care.' "

In both of the cases cited above, it was alleged that an oral contract had been entered into, while in the instant case a lost written contract is alleged to have been made. Since the plaintiff must prove by oral testimony, if at all, that such a written contract had actually been entered into as alleged in her petition, the same particular rule as to the quality and weight of proof to establish an oral contract will apply.

The witness Marion Swiger testified that after the death of his wife, Mary Swiger, he had some correspondence with William Woolsey relative to the adoption of his three minor children, and that he later visited the Woolsey home, then in Nebraska, and it resulted in entering into a contract signed by William Woolsey, Hannah Woolsey and the witness; that in 1917 or 1918, Hannah Woolsey and Beula and Erma Swiger visited him; that the evening after they left he missed the contract. Witness testified that he knew the contents of the contract, which was testified to be in the following words, after his name had been written and dated:

"As you have accepted our proposition to adopt the two younger of the children, you are to keep Inza the oldest and educate her as you see fit; we will take care of Beula and Erma as best we can but not give them more than a literary education. You do this and they shall share, share and share alike in what property we may have at our death. W. Woolsey, Hannah Woolsey and Marion A. Swiger were the signatures."

The witness later testified that he meant to say "the three shall share, share and share alike."

Iva Siggs testified through deposition that some time during the year 1903, the latter part of April or the first of May, she examined an instrument relating to the adoption of the two children, and that the substance of the contents of the instrument was "they were to adopt two children, Erma and Beula, or Beula and Erma, and at the death of William Woolsey and Hannah Woolsey, Inza was to share equally with the other two children, Beula and Erma"; that she personally read the contract, and that it was signed by William Woolsey and Hannah Woolsey and Mr. W. A. Swiger; that in 1917 or 1918, the morning after Mrs. Woolsey, Beula and Erma had visited the home of Marion Swiger, where witness lived, the contract was missing; that it was in 1903

when she saw the contract, and that Mr. Swiger had it; that Swiger did not tell her anything about it, but that she read it and that not to her knowledge did Swiger ever discuss the contract with her thereafter, until recently. The witness later testified that Marion Swiger told her that the contract was gone and he could not find it. There was no other testimony attempting to show knowledge of the actual existence of a contract between Swiger and William and Hannah Woolsey. The receipt signed by Marion A. Swiger, showing receipt as guardian of Inza Swiger of $100 for Inza Swiger, as provided in the will of William Woolsey, deceased, was introduced in evidence. The receipt was dated March 6, 1912.

When we consider as a whole the testimony introduced by plaintiff to prove that a written contract once existed and its contents as alleged in the petition, it is easy to conclude that such proof falls far short of that required by the rule adopted by this court. Some physical facts shown in the record seem to cast a shadow of doubt upon the fact that a contract ever existed. Exhibit "A" shown in the record purports to be a letter from William Woolsey to Marion Swiger concerning the adoption of the children. The date of the letter shows to have been changed, and it is not plain whether dated April 16, 1903, or 1906, and the date is very material. The second page of the letter shows to have been clipped from the top leaving parts of certain letters extending. Again, it is contended that the contract disappeared in 1917 or 1918. If there was such a contract, Swiger had it when the will of William Woolsey was being probated and his estate administered through the county court of Alfalfa county, Okla., and closed in 1912, during none of which time did Marion Swiger object to the will or the distribution of the estate under the will, but receipted for the $100 bequeathed to his ward, Inza Swiger.

This court is convinced that if any contract between Marion Swiger and William and Hannah Woolsey ever existed, it has not been sufficiently shown. The testimony does not measure up to the standard rule required in Robinson v. Haynes, supra; Pancoast et al. v. Eldridge et al., supra; Barnes v. Morris et al., 105 Okla. 17, 231 P. 466, and Bradley v. Bradley (Mo.) 24 S. W. 757, approved by this court.

A fact worthy of consideration herein is that the plaintiff waited 14 years after she became of age before she filed her suit attacking the will of William Woolsey and the decree of the court distributing what was then considered to be all of the estate of William Woolsey, deceased. After the Woolseys have passed away in death, the plaintiff claims the execution and loss of the purported instrument upon which she brings this suit.

It is unnecessary to consider the second assignment of error, relative to estoppel of the plaintiff by the act of her guardian accepting her legacy named in the will.

The question is presented here as to whether or not the widow, Hannah Woolsey, took under the will or under the statute, having failed to file her election.

When the estate of William Woolsey was first administered upon, it was administered on the theory that the real estate consisted only of the northeast quarter. That was the information of all concerned and all acted upon that theory. That was the home upon which the widow continued to live. By the terms of the will, Hannah Woolsey was to have only a life estate in the northeast quarter. Under the provisions of section 1607, Wilson's Revised Ann. Stat. of 1903, in force at the time of the death of William Woolsey, section 6328, Rev. Laws 1910 (1223, O. S. 1931), the widow had a right to remain upon and use the northeast quarter as her homestead so long as she desired to maintain it as her home. Holmes et al. v. Holmes, 27 Okla. 140, 111 P. 220; Bacus v. Burns et al., 48 Okla. 285, 149 P. 1115; Belt v. Bush, 74 Okla. 94, 176 P. 935. The fact that the widow occupied the homestead, as she had a right to do under the law independent of the will, would not amount to an election on her part to take under the will. This was an individual right and was not an interest in the testator's property and was not subject to testamentary disposition and did not pass under the will. Bacus v. Burns, supra. The widow had a right to elect to take under the will. The will bequeathed to her certain personal property invoiced at $2,129 in addition to a life estate. The real estate was invoiced at $8,000. It is material under the contentions here presented as to whether or not the widow did elect to take under the will.

In Bank of Commerce & Trust Co., Ex'r, v. Trigg et al., Ex'rs, 138 Okla. 216, 280 P. 563, this court held:

"As to whether the widow is put to an election between accepting the provisions of the will or taking as an heir under the

statute, depends upon the express or implied intention of the testator as evidenced by the terms of the will.

"Where the testator, by the terms of the will, has clearly manifested the intention to make the testamentary gift to the widow stand in lieu of her interest as an heir, she is put to an election if she desires to take under the will. On the other hand, if it does not so appear from the provisions of the will, the bequest to the widow contained in the will is to be deemed a bounty in addition to her interest as an heir in the estate.

"In determining what the intention of the testator was in relation to requiring an election on the part of the widow, consideration should be given to whether the provisions of the will are inconsistent with the widow's right to take both under the will and under the statute, and as to whether by so doing the widow would defeat the plan and intent of the testator as expressed in the will. Should it be determined that the widow's taking under both the will and statute will defeat the plan and intent of the testator, as expressed in the will, the widow will be put to an election, and if she desires to take under the will she must affirmatively elect to do so."

When a legatee has not filed his election to take under the will, it is often difficult to determine from the acts of the legatee whether he has or has not elected to take under the will. In Fox Ex'x, et al. v. Fox, 117 Okla. 46, 245 P. 641, this court held:

"No general rule can be formulated defining what acts of acceptance or acquiescence will constitute an election between a devise in a will and a right inconsistent with the will, but there must be an intention to make an election, or some decisive act that will prevent restoring the parties affected to the same situation as if such acts had not been performed."

We think there were sufficient acts on the part of Hannah Woolsey to show that she intended to take under the will. The probate records of the county court introduced in the record in this case show that Hannah Woolsey, the widow of William Woolsey, deceased, signed a receipt to the administrator showing the acceptance by her of the northeast quarter occupied as a homestead to have a life estate in same as provided by the terms of the will and all household goods, together with an organ, horse, two cows, three hogs, a wagon, a carriage, a top buggy, a spring wagon, farm implements, harness and corn in the crib. In addition thereto there were certain promissory notes in the aggregate sum of $915 and certain cash turned over to her. It is very evident from the language and terms of the will that the testator intended to make the testamentary gifts to the widow stand in lieu of her interest as an heir, and under the rule announced in Bank of Commerce & Trust Co., Ex'r, v. Trigg et al., Ex'rs, supra, the widow was put to an election if she desired to take under the will. The receiving from the executor of the property provided for her in the will, and stating in her receipt for same that it was accepted as the property provided for her in the will, we think, was a sufficient act on the part of the widow to show she was accepting the terms of the will. This is but a reasonable conclusion in view of the fact that the widow knew she could remain upon the land during her lifetime, and that it should then go to the children she had raised and to their heirs if not sooner disposed of. It is immaterial whether or not the property received by the widow, Hannah Woolsey, in addition to the homestead rights allowed her under the law, was less than one-third of the value of the estate of her husband, William Woolsey, since she elected to take under the will.

From the testimony presented and the law governing the facts upon the issues presented by the pleadings, we must conclude that the judgment of the trial court is not clearly against the weight of the evidence, but is fully supported by the evidence, and it is therefore affirmed.

McNEILL, C. J., and RILEY, PHELPS, and GIBSON, JJ., concur.