PAULL et al. v. EARLYWINE.

No. 31690.　June 5, 1945.

*159 P. 2d 556.*

Mike Foster and Clay M. Roper, both of Oklahoma City, for plaintiffs in error.

Person E. Woodall, of Norman, for defendant in error.

WELCH, J. Ida B. Earlywine, as plaintiff, instituted this action for specific performance of an alleged contract to will the property involved to her.

On the 19th day of October, 1912, Alice M. Paull and Charles E. Paull executed separate wills. We quote material portions of Charles' will as follows:

"First: I direct the payment of all my just debts and funeral expenses.

"Second: I give and devise to my brother, James C. Paull, the sum of Five Dollars.

"Third: I give and bequeath all the rest, residue and remainder of my property, both real and personal, to my sisters, Alice M. Paull and Mrs. Ida B. Earlywine, and my brother John W. Paull, all of whom reside in Cleveland County, Oklahoma; said estate to be divided equally among them. In case only two of the last named are living at the time of my death, then my estate, with the exception of the Five Dollars willed to James C. Paull, is to go to and be equally divided between the two survivors. In case only one of the last three named persons, to-wit, Alice M. Paull, Mrs. Ida B. Earlywine and John W. Paull, survives me, then all of my estate, with the exception of the Five Dollars bequeathed to my brother James C. Paull, I will and bequeath to my sister or brother surviving me. And in the event that the said Alice M. Paull, Mrs. Ida B. Earlywine or John W. Paull do not survive me, then I will and bequeath all of my property, both real and personal, with the exception of the Five Dollars so willed and bequeathed to the said James C. Paull, to my beloved nephew, Cecil J. Earlywine, and niece, Lorna May Earlywine, children of my sister Mrs. Ida B. Earlywine; said estate to be divided equally between them. And in case only one of said children survives me, then all of my estate, both real and personal, is to go to said niece or nephew surviving me, with the exception of the Five Dollars so willed and bequeathed to my brother, James C. Paull."

Alice's will was identical except that Charles was named therein as beneficiary instead of Alice. Charles died in 1917, and upon probate of his will his property was distributed in 1918 as therein provided. Alice died in 1942, and for the purposes of this action it is assumed that she had revoked her said will subsequent to the year 1932, and that she died intestate, because no will could be found.

The defendants are children of James C. Paull, also now deceased, and under the statutes of descent and distribution they inherit a one-half interest in Alice's estate, and the plaintiff takes by such statutes the other one-half interest therein.

If, however, plaintiff prevails herein, she will take the entire estate under the terms of the alleged contract, less the five dollars provided for James.

The testimony given by the witnesses at the trial shows that Charles, Alice, John, and James Paull, and plaintiff, Ida B. Earlywine, were brothers and sisters. That Charles and Alice were never married. That Charles and Alice were living by themselves on a farm near Norman, Okla., in 1912, and that they went together to the office of an attorney in Norman on October 19, 1912, and procured the two wills to be drafted

and executed; that they were each of the same mind that their brother James should receive no substantial part of either of their estates because they felt that James obtained more than his just portion of their deceased father's estate. One witness testified that as late as 1932 he had seen this will which had been made by Alice. But no one saw it thereafter, and when Alice died in 1942 no will could be found.

It is Ida's theory herein that a court of equity will enforce a contract and agreement to leave property by will, and that mutual or reciprocal wills made in pursuance of such contract supported by a consideration are not subject to revocation, especially after one of the parties to the contract has accepted benefits thereunder. Among other cases she cites Frazier v. Patterson, 243 Ill. 80, 90 N.E. 216; Gray v. Perpetual Trustee Co., 60 A.L.R. 617; Beveridge v. Bailey, 53 S.D. 98; Doyle v. Fischer, 183 Wis. 599, 198 N.W. 763; Stephens v. Meyer, 91 Ore. 114, 177 P. 37; Clements v. Jones, 166 Ga. 738, 144 S.E. 319, and Maurer v. Johannsson, 223 Iowa, 1102, 174 N. W. 99.

We have examined the cited authorities and others and observe that courts of equity have in many cases granted relief when the contract is clearly shown and when equitable considerations require.

The form and extent of the relief to be granted is of necessity governed by the facts and circumstances in a particular case and is always conditioned firstly upon a contract based upon a sufficient consideration and equitable in its terms.

Our first problem in the present case, then, is to determine whether or not Charles and Alice entered into such a contract as to justify us in proceeding further with a consideration of its effect in law.

Many of the cases involve instances where a husband and wife have by will provided jointly for the disposition of their jointly owned or community property after the death of both. In the matter of proof of the contract, the will itself and alone, in some cases, has contained sufficient data and specific expressions to establish the contract. We think the authorities are almost in unanimous accord that the proof of the contract must be clear and convincing, for in the absence of such a contract a party may revoke his will at pleasure. 84 O.S. 1941 § 52. The Supreme Court of California, referring to a similar statute, in Rolls v. Allen, 204 Cal. 604, 269 P. 450, held:

"Any person executing a conjoint or mutual will with another does so with notice given by Civ. Code, sec. 1279, that such a will is subject to revocation."

It was further therein held:

"Mere concurrent execution of mutual wills with full knowledge of their contents by both testators is not enough to prove a legal obligation to forbear revocation in the absence of a valid contract."

"Mere execution of mutual will has no tendency to show that there is a contractual obligation to make such a will."

In Langston v. Currie, 95 Mont. 57, 26 P. 2d 160, the Supreme Court of Montana held:

"Proof of deceased's parol agreement to leave property to certain persons must establish all essentials of contract, show it to be fair, equitable, definite, and certain, and clearly establish agreement by quality, not quantity, of testimony."

In Ridders v. Ridders, 156 Ore. 165, 65 P. 2d 1424, the Supreme Court of Oregon held:

"Independent wills, made by close relatives bound by ties of love and affection, bequeathing property to each other, do not create inference or presumption, in absence of other evidence, that such wills were result of contract or that any mercenary consideration entered into making thereof."

"To establish oral contract between two persons to make reciprocal wills, after death of one, requires unambiguous, clear, and convincing evidence."

The facts and circumstances of that case are almost the same as we have here. We quote the following from the body of the opinion:

"In the complaint it is alleged, in effect, that prior to the making of the wills, above referred to, Mary, Lena, and Frank entered into an agreement to make reciprocal wills and that the wills above referred to were the result of that agreement. . .

"Mr. Hill, of course, drew all three wills, but he had been the family attorney for many years and there is nothing significant in his drawing all three wills. . . . .

" 'The cases are legion involving contracts to devise and bequeath property. They may be generally grouped or classified as follows: (1) Cases wherein the wills themselves disclose a contract or agreement to make certain disposition of property. In this class of cases the wills refer to each other and generally contain a recital that each will is made in consideration of the other. (2) Cases in which the claimants assert an agreement whereby certain services of a peculiar and personal nature were rendered in consideration of a promise to devise or bequeath property. (3) Cases where the wills themselves do not refer to each other or disclose any contract, but which are nevertheless taken into consideration, together with all of the facts and circumstances surrounding their execution, in determining the existence of an alleged contract. The cause of the plaintiffs, if any exists, comes within the last-named classification.' Taylor v. Wait, 140 Ore. 680, 14 P. 2d 283, 285.

"There is no competent evidence of a contract made between the two sisters and the brother at or prior to the time of October 18, 1921, the time that the wills were executed, unless we should say that the wills themselves were evidence of an agreement.

"Separate wills wholly independent of each other, made by close relatives bound together by ties of love and affection, bequeathing property to each other, do not create an inference or a presumption, in the absence of other evidence, that such wills were the result of a contract or that any mercenary consideration entered into the making thereof. Such wills are a natural disposition of property.

" 'Again, the discussion by two persons bound to each other by the closest ties of affection as to disposition of their property, resulting in separate wills by which the property of each was left to the other, affords no grounds for the inference that either undertook or exacted a legal obligation. Such action may be far more reasonably attributed to the promptings of affection, and courts should not introduce the mercenary element, except upon clear affirmative proof that it was present within the understanding of both parties. . . .

" 'This flowing together of life, thought, and action, so far from importing that what they did for each other was the result of contract, a benefit received being regarded the consideration of another bestowed, connotes the mutual bestowal of benefits growing out of the devotion and intimate association entirely independent of consideration and without thought of contract. Contract imports the standing apart and coming together as the result of an agreement for a consideration. The distinction is forcibly illustrated by the case of Gardner v. Gardner, 49 S.C. 62, 26 S.E. 1001, where the parties stood in antagonism to each other, and after the execution of a will by one, as it was alleged, in pursuance of a contract to settle the dispute, the others ceased to press their claim. On the other hand, these wills were the result of the union of life and purpose, and not of a negotiation between the sisters in which each as a separate party represented her own interest. It was most natural that each should wish to bestow upon her sister her entire property, and no contract can be implied from the fact that this reasonable and natural testamentary disposition should have been made. That the wills were made at the same time is of little, if any, significance when the close association and common life are considered.' Wilson v. Gordon, 73 S.C. 155, 160, 53 S.E. 79, 81.

"To establish an oral contract between two persons to make reciprocal wills after the decease of one of the parties, requires unambiguous, clear, and convincing evidence. (Citing authorities.)

"The wills being separate and inde-

pendent, and not being made by virtue of any contract or agreement, the makers could change or revoke them at pleasure without in any manner affecting the wills of the others, and this is evidently what happened. . . ."

.In Kinnett v. Goodno, 170 Okla. 620, 41 P. 2d 824, this court held in paragraph 7 of the syllabus as follows:

"Before a court of equity will specifically enforce an oral contract to devise property, the proof of the contract must be so cogent, clear and forcible as to leave no reasonable doubt as to its terms and character."

In Frontier Lodge No. 104, A.F. & A.M. of Washington, Kansas, v. Wilson, 139 Kan. 75, 30 P. 2d 307, the Supreme Court of Kansas held:

"In an action by the residuary legatee in separate wills executed by husband and wife, to enforce specific performance of a contract said to have been made by the husband and wife to leave their property to such residuary legatee, the affirmative proof of the making and existence of such agreement is essential to plaintiff's recovery, and either of such wills made without such a contract is revocable by the execution of a subsequent will.

"In this state, joint mutual and reciprocal wills may be revocable, as are other wills unless they are contractual."

In Aho v. Ahola, 4 2d Wash. 598, 104 P. 2d 487, the Supreme Court of Washington held:

"In order to establish an oral contract to bequeath property, the evidence must be conclusive, definite, certain, and beyond all legitimate controversy."

The evidence here goes no further than to prove that in 1912 Charles and Alice were of the same mind as to beneficiaries under their separate wills. The dispositions therein made were most natural and reasonable under the circumstances then existing and there is nothing in the wills themselves or in the testimony to show that there was any mercenary consideration or other contractual intentions on the part of either. There is nothing to indicate that Charles would not have so made his will except for or in consideration of the execution of a similar will by Alice or vice versa. There is no evidence contained in the instruments themselves or the testimony and surrounding circumstances that either party was not left free to revoke his separate will at pleasure. It is therefore unnecessary for us to determine the full effect such an agreement would have had in the present case.

The demurrer of the defendants should have been sustained.

Reversed.

GIBSON, C.J., HURST, V.C.J., and OSBORN, BAYLESS, CORN, and DAVISON, JJ., concur. RILEY, J., dissents.

RILEY, J. (dissenting). The rule in American jurisprudence is that where mutual or reciprocal wills are the result of a contract and after the death of one, the successor has accepted benefits under the will of the other, equity will interfere to prevent fraud. Alexander on Wills, vol. 1, pp. 96-105; 69 C.J. 1303; Stephens v. Myers, 91 Ore. 114, 177 P. 37; 2 A.L.R. 1155; 73 A.L.R. 1397.

The contract or agreement may be established by circumstantial evidence showing the relation of the parties, their conduct before and after execution of the wills, i.e., that each party in executing a will acted with the knowledge of each other and for the same motive, that the two wills were drawn by the same person, at the same time, and at the joint request of both parties, and that the wills were in fact executed in pursuance of a common purpose and understanding.

Where such a contract or agreement is established and supported by the consideration of an executed contract to devise property (Page on Wills, 2d Ed. § 93), even though a will executed in pursuance of such a contract has been revoked so as not to be admissible to probate, it stands as evidence of a contract enforceable in a court of equity as such. Brown et al. v. Johanson 69 Colo. 400, 194 P. 943.

In a leading English case, where a will was executed by husband and wife, making disposition of their property, and after the death of the husband, the wife had the husband's will probated, received benefits thereunder, and then executed a new will, the court said as to revocation:

"I cannot be of the opinion that either could, during their joint lives, do it secretly; or ·that after the death of either, it could be done by the survivor . . . it is a contract between the parties which cannot be rescinded but by both." Defor v. Pereira, 1 Dick. 419.

The English and some American cases do not distinguish between the will itself and the right of action on the contract in performance of which mutual wills were made. Nevertheless, such mutual wills incorporating therein provision for the benefit of third persons serve· as evidence of oral agreements merged into the written instruments, requiring each of the parties to devise property received under such contract to certain relatives. Though the survivor's will be regarded as revoked, equity binds the survivor as to disposition of the property received as a result of the contract. Page on Wills (2d Ed.) § 97; Jessup v. Brown, 104 Neb. 770, 178 N.W. 633; Brown et al. v. Johanson, supra.

I would affirm the judgment.