BEVERIDGE, Respondent, v. BAILEY, et al, Appellants.

(220 N. W. 462.)

(File No. 6539. Opinion filed June 30, 1928.)

*J. H. Voorhees* and *T. M. Bailey,* both of Sioux Falls, for Appellants.

*Danforth & Barron,* of Sioux Falls, for Respondent.

BURCH, P. J. On the 6th day of January, 1920, Dennis L. McKinney and Emma McKinney (husband and wife) executed with due formality the following instrument:

"We, Dennis L. McKinney and Emma McKinney (husband and wife) of Sioux Falls, Minnehaha County, South Dakota, being each of sound mind and memory, and mindful of the uncertainty of human life, do hereby make, this our conjoint will, hereby revoking all wills by either of us heretofore executed.

"First: The said Dennis L. McKinney does hereby will and direct that there first be paid out of his estate his funeral expenses and the expenses of his last illness and all of his just debts and liabilities and does hereby will, devise and bequeath to the said Emma McKinney (should she survive him) all the rest and residue of his estate, real and personal and mixed, and wherever situated. The said Dennis L. McKinney does hereby declare it to be his intention not to leave any portion of his estate to his son, Russell Bennet McKinney, or to any descendant of the said Russell Bennett McKinney or of the late Charles LeRoy McKinney. The said Dennis L. McKinney does further appoint the said Emma McKinney as sole executrix of this, his will, and does hereby direct that no bond or undertaking be required of her as such executrix. In case the said Dennis L. McKinney shall survive the said Emma

McKinney he does hereby devise and bequeath all the rest and residue of his estate, real, personal and mixed, and wherever situated, remaining after the payment of his funeral expenses and the expenses of his last illness and all of his debts and liabilities, as follows, to-wit:

"(a)    To Max F. Beveridge, of Sioux Falls, South Dakota, all shares of stock in the McKinney-Beveridge Automotive Company, and all indebtedness to the said Dennis L. McKinney of the said McKinney-Beveridge Automotive Company and the premises in which the said McKinney-Beveridge Automotive Company is now transacting business, said premises being the property owned by the said Dennis L. McKinney and Emma McKinney as joint tenants in lots seven (7), eight (8) and nine (9) in block twenty-six (26) of J. L. Phillip's Addition to Sioux Falls, Minnehaha county, South Dakota, upon condition, however, that the said Max F. Beveridge shall pay to Carrie Fjelstad, of Sioux Falls, South Dakota, the sum of twenty-five dollars per month during the natural life of the said Carrie Fjelstad.

"(b)    To his step-daughter, Mrs. Bernice Bendixsen, of Minneapolis, Minnesota, the sum of five thousand dollars and

"(c)    The rest and residue of his estate to his sister-in-law, Mrs. Nannie Tennant, of Middlesboro, Kentucky.

"Second:    The said Emma McKinney does hereby will and direct that there first be paid out of her estate her funeral expenses, the expenses of her last illness and all of her just debts and liabilities.    All the rest and residue of her estate, real, personal and mixed, and wherever situated, the said Emma McKinney does hereby devise and bequeath to the said Dennis L. McKinney (should he survive her), and does hereby appoint the said Dennis L. McKinney her sole executor of this her will, and does hereby direct that no bond or undertaking be required of him as such executor.    In case the said Emma McKinney shall survive the said Dennis L. McKinney she does hereby devise and bequeath all the rest and residue of her estate, real, personal and mixed, and wherever situated, remaining after the payment of her funeral expenses and the expenses of her last illness and all of her just debts and liabilities, as follows, to-wit:

"(a)    To Max F. Beveridge, of Sioux Falls, South Dakota, all stock in the McKinney-Beveridge Automotive Company, and all

indebtedness of the said Emma McKinney of the said McKinney-Beveridge Automotive Company, and the premises in which the said McKinney-Beveridge Automotive Company is now transacting business, said premises being the property owned by the said Dennis L. McKinney and Emma McKinney as joint tenants in lots seven (7), eight (8) and nine (9) in block twenty-six (26) of J. L. Phillip's Addition to Sioux Falls, Minnehaha County, South Dakota, upon condition, however, that the said Max F. Beveridge shall pay to Carrie Fjelstad, of Sioux Falls, South Dakota, the sum of twenty-five ($25) per month during the natural life of the said Carrie Fjelstad.

"(b)    To the step-daughter of the said Dennis L. McKinney, Mrs. Bernice Bendixsen, of Minneapolis, Minnesota, the sum of five thousand dollars, and

"(c)    The rest and residue of her estate to her sister, Mrs. Nannie Tennant, of Middlesboro, Kentucky.

"In witness whereof, the said Dennis L. McKinney and said Emma McKinney have subscribed their names hereto this sixth day of January, 1920, at Sioux Falls, Minnehaha county, South Dakota.

"Dennis L. McKinney.<br>"Emma McKinney."

Dennis L. McKinney died on the 3d day of January, 1925, and Emma McKinney took under the will all his property after payment of debts and charges against his estate. Two days later, on the 5th of January, she made another will, revoking all former wills, under which Max F. Beveridge received nothing. In July, 1925, she died without having fully completed the probate of her husband's estate, and C. O. Bailey, who had been named as the executor of her will, was appointed administrator with the will annexed of her husband's estate. Plaintiff, Max Beveridge, brings this action to enforce a contract he claims was made in his favor by Dennis and Emma McKinney. He alleges in his complaint that they agreed:

"For mutual considerations, that they would make their conjoint, mutual, and reciprocal wills in one instrument, and that each would devise to the other all their estate of every nature, description and kind, with the joint, mutual and reciprocal provision that after the death of each of said parties that there would be devised to the plaintiff herein, certain real and personal property known

and described as all shares of stock in the McKinney-Beveridge Automotive Company, and the premises on which said McKinney-Beveridge Automotive Company was transacting business."

Defendants admit the execution of the wills, but deny the contract claimed by the plaintiff, and contest his right to the relief asked. From a judgment in favor of plaintiff and an order denying a new trial, defendants appeal.

There are several important and interesting questions presented by the record, but the one that must first receive our attention is, Is the evidence sufficient to establish the existence of the contract alleged in the complaint? If no contract has been established, then the other questions need not be considered. Respondent frankly concedes the power of Emma McKinney to revoke the joint will even after the death of Dennis McKinney, and admits that her subsequent will is valid and disposes of her property, except such property as she was bound by the contract to convey to others. Respondent's counsel say:

"We agree with appellants that Emma McKinney had a legal right to make a new will, and that her last will was entitled to be admitted to probate by the county court of Minnehaha county. The authorities generally are in harmony upon that proposition. If, however, the joint will was the result of a contract or compact between Mr. and Mrs. McKinney, while the will as such would be revocable, the contract as such could not be revoked by Mrs. McKinney after the death of Mr. McKinney and after she had received the benefits of the contract under the provisions of his will."

To prove the contract, respondent did not offer any writing purporting to be the contract, nor did he offer any direct proof that there was a contract. He relies upon the provisions of the joint will, supplemented only by the circumstances surrounding its execution, the relationship of the parties, the fact that respondent had known the McKinneys for many years, was a partner of Dennis McKinney in the automobile business at the time of the execution of the will and at the time of his death, and a few unimportant statements made by Dennis McKinney to the effect that his reason for making the will was that he did not want his wife's relatives in the South to have it, that Max Beveridge had been like a son to him, and was closer to him than any of his own relatives. Conceding that a man may make a contract to leave his property

by will, the same as he may make a contract to sell it, and that such contract may in a proper case be enforced by a court of equity, such contract must be definite and certain as to its terms and of a character that could be specifically enforced, if made for a sale of the property. In Alexander v. Lewes, 104 Wash. 32, 175 P. 572, it is said such contracts are not favored, and the courts generally hold that they must be clearly shown in order to be enforceable.

■■ Respondent contends that no proof aliunde the will is necessary to establish the contract or compact, where the will is joint, mutual and reciprocal, and all appears in one instrument, and cites cases to support his position. Here it may be well to inquire if the will offered by respondent is joint, mutual, and reciprocal. While the will purports to be the conjoint will of the parties, and was jointly executed, it is readily divisible, and is by its terms divided into two parts, first, the will of Dennis L. McKinney, and, second, the will of Emma McKinney. Neither will refers to the will of the other, and each disposes of the individual property of the one making the devise. In this respect it differs from many joint wills under consideration in the cited cases. Beyond the knowledge that may be inferred from the joint execution of the wills, as evidence of a contract they can create no stronger presumption of a contract than mutual reciprocal wills separately executed. There is no joint disposition of any of the property. No proof aliunde the will is necessary if the will, unaided, proves the contract. But the contract must be proven, and, if it cannot be proven by the will because the will does not contain sufficient matter to disclose its terms, then other proof must be made, not because the will alone is incompetent to prove it, but because it is insufficient.

A review of some of the cases cited by respondent may serve to illustrate when a will alone is sufficient and when it is not. Canada v. Ihmsen, 33 Wyo. 439, 240 P. 927, 43 A. L. R. 1010, involves the sufficiency of mutual wills as memoranda to satisfy the statute of frauds in proving the contract to make a will. The plaintiff and Mrs. Hill were owners of adjoining lots in the city of Laramie, and each made a will devising his or her lot to the other. Mrs. Hill afterwards changed her will without the consent or knowledge of plaintiff, leaving the lot to one Scott. In discussing the sufficiency of mutual wills as evidence of contract, the court said:

"The principles of law applicable to contracts in connection with such wills, or in connection with joint wills, reciprocal in their nature, appear to be very much the same as those that are applicable when only one party agrees to make such a will. * * * The weight of authority is that such agreements to make wills are not established merely because two persons have made reciprocal testamentary dispositions in favor of each other, the language of such wills containing nothing to the effect that the instruments were the result of a contract. * * * Of course, in a proper case, where the question of a contract arises, the fact of the execution of mutual or reciprocal wills may be introduced in evidence as tending to prove a contract, but it is not conclusive. * * * It should require something more than the mere making of reciprocal testamentary dispositions to convert a revocable instrument into an irrevocable compact."

Five of the cases cited by respondent as supporting the contention that no proof aliunde the will is necessary treat of joint wills in which there is a joint disposition of the property. In each case there is an attempt to jointly direct a disposition of property after the death of both. In Frazier et al v. Patterson et al, 243 Ill. 80, 90 N. E. 216, 27 L. R. A. (N. S.) 509, 17 Ann. Cas. 1003, all the property is given to a daughter "after the decease of both." In Sherman et al v. Goodson's Heirs et al (Tex. Civ. App.) 219 S. W. 839, a disposition is made following these words:

"It is our joint will, and we so direct, that all the residue of our property after the death of each of us shall pass and descend to the following named persons, share and share alike."

In Baker v. Syfritt, 147 Iowa, 49, 125 N. W. 998, each gives to the other a life estate, and the remainder is disposed of following these words:

"After the death of the survivor of us, as aforesaid, it is our wish that. * * *"

In Campbell v. Dunkelberger, 172 Iowa, 385, 153 N. W. 56, this provision appears:

"It is the will of both Maria Dunkelberger and Elias Dunkelberger that at the death of both, all the real estate and personal property and the rest and residue of our estates, not hereinbefore disposed of, shall go to our heirs in equal shares and by that we mean that all our children living and dead shall have an equal share in our estate, if the deceased children have surviving issue."

And in Rastetter v. Hoenninger, 214 N. Y. 66, 108 N. E. 210, the will contains this provision:

"After the death of the survivor of either of us, all our property both real and personal, shall be divided in the manner following:"

And in the introductory clause the testators declare:

"This, and this only, to be our last mutual and joint will and testament,"

—and close with these words:

"We again declare this, and this only, to be our last mutual and joint will and testament."

The court, in considering this case, said:

"We are not prepared to say that the mere fact of a conjoint, reciprocal testamentary disposition by two persons establishes a contract not to revoke."

■ In concluding that a contract is proven, the court lays stress on the introductory and closing words as evidence of a contract. An attempt to jointly direct the disposition of the property after the death of both is much stronger evidence of a contract to do so than are mere alternative provisions, inoperative by its terms if the other survives. In Doyle v. Fischer, 183 Wis. 599, 198 N. W. 763, 33 A. L. R. 733, the will there considered was jointly executed, and disposed of the property of both among the children of the couple. By the terms of the will, when the gifts by one are taken alone, there appears a gross partiality on the part of one parent in favor of some of his children and against others, but the two, taken together as a joint disposition, substantially treat the children alike. To illustrate, the father gave to one son 110 acres of land, to another son 40 acres, while the mother gave to the son receiving 40 acres 80 acres standing in her name. Bequests to other children were adjusted in similar manner, thereby indicating an agreement between the parents whereby the individual property of each was jointly considered and disposed of in a manner natural to parents. It was held that such a will was evidence of a contract.

The authorities generally hold that a contract may be established by a joint will or by mutual and reciprocal wills without other evidence when such wills disclose the contract. And some courts seem to hold that the mere fact a will is joint, mutual, and reciprocal proves such contract. In practical effect such holdings

render such wills irrevocable after the death of one. There can be no sound reasoning that will support a holding that virtually transforms the character of the instrument from a will to a contract. Two other cases cited by respondent may be briefly mentioned. They seem to support respondent's position. Stevens v. Myers, 91 Or. 114, 177 P. 37, 2 A. L. R. 1155, is in point because of the character of the mutual wills which were held to show the contract. In that case there was a vigorous dissenting opinion, and the majority opinion did not have the concurrence of the rest of the court. One judge concurred in the result, and one took no part. Chambers v. Porter (Iowa) 183 N. W. 431, involves a very different state of facts. As stated by the court, the questions involved are almost entirely in regard to the facts. Much extraneous evidence was received, sufficient according to the court to show that the parties were adjusting their property rights at about the time the wills were executed, and the wills were made in furtherance of their agreement pursuant to such adjustment. The case is not in point.

█ The controlling question before us is, Do the jointly executed wills in this case establish a contract to dispose of property by will in the manner contended for by respondent? As said before, the instrument relied upon is not in the strict sense a joint will, but is in reality one writing containing two mutual wills. The New Jersey court, in Deseumeur v. Rondel, 76 N. J. Eq. 394, 74 A. 703, says:

"A testamentary disposition contained in one writing and disposing of property held jointly is, I presume, precisely referred to as a 'joint will'; whereas, the same document, if it refers to and deals with property held separately, would probably be more precisely termed a 'mutual will.'"

If we enlarge the definition to include separately owned property mentioned for the purpose of making a joint testamentary disposition of it, still the will of the McKinneys does not fall within the definition of a joint will. Considered as mutual wills, it may fairly be inferred that there was an agreement between the parties to make them in one instrument, but that is about all of the contract that is disclosed. If there was anything more, it is not disclosed. Each is complete in itself, and couched in language common to individual wills generally. Dennis gives to his wife his

property in case she survives him, with alternative provisions in case she does not. No one would contend that, if his will stood alone, the alternative provisions evidenced an agreement with the wife to make the same disposition if she should survive him. Emma gave all her property to her husband, in the event that he survived her, with alternative provisions, in the event that he died first. The fact that the alternative provisions in her will were the same as in his may indicate some agreement as to the matter, but it does not indicate what the agreement was. If there was an agreement, the reciprocal devises one to the other might supply the consideration, but not the contract. It is quite possible there was no agreement as to the alternative provisions in each will, and that their similarity resulted, not from contract, but from common desire. They were husband and wife, and might have had friends in common, and a common desire to benefit such friends in the same manner, if the one of primary concern died. No attempt is made by either to direct a disposition of the property remaining after the death of both, but, on the contrary, an unrestricted gift was made to the survivor. If there was a contract, the same may be said here as was said in Canada v. Ihmsen, supra, cited by respondent:

"It is not impossible, or even improbable, that some conditions were attached to the contract. * * * The mere agreement to execute a will was not an agreement not to revoke it."

See, also, a case in point supporting this view, In re Oldham, 14 British Ruling Cases, 808. We are satisfied that the contract alleged in the complaint has not been proven. As this disposes of the case and renders a reversal necessary, other questions need not be considered.

The judgment and order appealed from are reversed.

POLLEY, SHERWOOD, CAMPBELL, and BROWN, JJ., concur.