DAWSON, et al. Appellants, v. CORBETT, et al. Respondents

(21 N. W.2d 758.)

(File No. 8765. Opinion filed February 25, 1946.)

Rehearing Denied April 18, 1946.

**John Carl Mundt,** of Sioux Falls, and **Owen C. Donley,** of Elk Point, for Appellants.

**A. J. Beck,** of Elk Point, and **Paul M. Hatfield,** of Sioux City, Iowa, for Respondents.

SICKEL, J. This is an action brought by plaintiffs for the specific performance of an alleged contract by William Dawson and Emma S. Dawson, his wife, to leave their property to their children in equal shares. The defendants moved to dismiss the plaintiffs' complaint for the reason that it fails to state a claim upon which relief can be granted. This motion was granted. From the order of dismissal the plaintiffs have appealed.

One of the issues presented to the circuit court, and to this court, is whether the complaint alleges facts sufficient to show a valuable consideration for the alleged contract to change the terms of the wills of William Dawson and Emma S. Dawson.

The complaint alleges that Edgerton Ellsworth Dawson and Ruth N. Dawson were husband and wife. They borrowed money from the First National Bank of Hawarden, Iowa,

upon their notes indorsed by William Dawson, the father of Edgerton Ellsworth Dawson. The borrowers gave the indorsers their notes in corresponding amounts. On February 21, 1922, the borrowers and the indorser signed a contract whereby the indorser agreed to surrender his notes to the borrowers as the borrowers paid the notes held by the bank. The amount due on the notes at that time was $4,755.70. On or about May 24, 1924, the bank commenced action on one of the notes held by it, and on May 26, 1924, William Dawson and Emma S. Dawson, his wife, made their last wills and testaments. The will of the husband provided that if his wife should not be living at the time of his death his daughters should receive $5,000 each. The will further provided that: "I further direct that all the monies which I have paid to or in behalf of Edgerton Ellsworth Dawson during my life time shall be considered as gifts and not advancements." The will then further provided that the remainder of the property belonging to the testator should be divided among the three children in equal shares. Thereafter, William Dawson paid all the notes due the bank. The complaint further alleges that William Dawson and Emma S. Dawson told their son and his wife that they had made their wills, and acquainted them with the provisions contained therein; that they told the son and his wife: "That it was their will and wish that their three children should each inherit an equal amount from them after they were through with it, taking everything into consideration, but no more. That said Edgerton Ellsworth Dawson told the said William Dawson and Emma S. Dawson that it was not necessary to have made said Wills in that he would pay said promissory notes amounting to around $4755, and interest, just as he had agreed to do, and that he would do so as soon as it was possible for him to do so. That said William Dawson and Emma S. Dawson both stated that in such event they would change their Wills or destroy them entirely. That all they were interested in was to see to it that none of their children received more than the others. That one was no better than the others. That they wanted to properly protect their children

in case anything might happen. That they wanted each child to have one third of their estate and no more."

The complaint further alleges that thereafter the son reimbursed the father for the amount paid by the father to the bank in discharge of the obligations held by it against the son and his wife, completing the payments about March 23, 1923; that the father and mother said to the son: "* * * They would now change or destroy their Wills, or fix it so that each of their children would receive an equal share of their estate when they were through with it. That each one of their children were to receive one third share but no more, in their property after they were through with it. That more particularly, said Edgerton Ellsworth Dawson would receive his one third share in his estate by deed or Will, by reason of having paid back said amount of approximately $5000."

William Dawson died July 17, 1934, without changing or revoking his will. The will was admitted to probate, and distribution was made to his widow according to its terms. Emma S. Dawson died February 10, 1938, without changing or revoking her will, and her will was admitted to probate in Union county. Distribution of her estate has not been made. The son died December 6, 1938.

The claim of consideration for the contract is based on the allegations of the complaint that the father indorsed some notes for the son and had to pay them; that the parents made contemporaneous wills by which the survivor made a testamentary gift of this debt to the son instead of treating the debt as an advancement; that the parents and the son agreed that if the son repaid this obligation to the father, the parents would then change their wills so as to make a bequest to the son in cash to take the place of the gift of the debt, or would destroy the wills, to the end that their three children would share equally in their estate; that the son thereafter paid the debt.

It is well settled that a contract to make or change a will so that property will be left in a certain way, is valid and enforcible if based on a good consideration. Pomeroy's Specific Performance of Contracts, 3d Ed., § 191; Schouler

on Wills, Executors and Administrators, 6th Ed., §§ 694, 700; 68 C.J., Wills, § 187; Page on Wills, § 1707; Beveridge v. Bailey, 53 S. D. 98, 220 N. W. 462, 60 A.L.R. 619, Rehearing, 53 S. D. 382, 220 N. W. 868, 60 A.L.R. 619.

A good consideration is any benefit conferred or agreed to be conferred upon the promisor, to which the promisor is not lawfully entitled, or any prejudice suffered, or agreed to be suffered by the promisee, other than such as he is at the time of consent lawfully bound to suffer, as an inducement to the promisor. SDC 10.0501.

 Payment of the debt to the father was performance of the condition on which the complaint alleged the parents promised to change or destroy their wills. This performance, however, was the payment of an existing obligation. It conferred no additional benefit upon the parents, and it was not prejudicial or detrimental to the son. Templeton v. Butler, 117 Wis. 455, 94 N. W. 306; Schaadt v. Mutual Life Ins. Co. of N. Y., 2 Cal.App. 715, 84 P. 249; Robinson v. Foust, 31 Ind. App. 384, 68 N. E. 182, 99 Am. St. Rep. 269; 17 C. J. S., Contracts, § 112.

 Appellants also claim that the obligation to pay the debt was discharged by paragraphs V of the wills, and that therefore it was not an existing obligation of the son at the time the payments were made. A will is ambulatory and revocable until the death of the testator. It "produces no legal effect upon the property bequeathed or devised, and gives no interest therein to the legatee or devisee, until that time." 68 C.J., Wills, § 224. The will did not discharge the debt.

For the reasons stated we have concluded that the complaint does not state facts sufficient to constitute consideration for the contract to change or destroy the wills.

The order appealed from is affirmed.

All the Judges concur.

CASH, Circuit Judge, sitting for POLLEY, J.