HORTON et al. v. CRONLEY et al.

No. 35010.

Supreme Court of Oklahoma.

Dec. 22, 1953.

Rehearing Denied Feb. 9, 1954.

Application for Leave to File Second Petition for Rehearing Denied May 18, 1954.

Monnet, Hayes & Bullis, Oklahoma City, M. A. Holcomb, Buffalo, for plaintiffs in error.

Tom Hieronymus, Tom Z. Wright, Woodward, for defendants in error.

O'NEAL, Justice.

This action involves the question of whether one-half of the property of Henrietta Buck, deceased, should pass to the brothers and sisters of her deceased husband, or whether her property, under her will, should pass in its entirety to her brothers and sisters and those in privity with them.

Ben Buck and Henrietta Buck, husband and wife, homesteaded land in Meade County, Kansas, in the year 1882 and 1883. During the depression of 1892, they lost their holdings and thereafter moved to Harper County, Oklahoma; they lived a humble, frugal and industrious life and finally acquired extensive land holdings both in Harper County, Oklahoma, and Beaver County, Oklahoma.

On October 9, 1922, they contacted a banker at Gate, Oklahoma, and advised him that they desired to execute a will. The banker had some printed forms of wills in his possession and filled in one of the forms as requested by them. The will was signed by each of them and witnessed by the banker, E. I. Haworth, and by Merit T. Maphet and F. C. Haworth, all of Gate, Oklahoma.

The pertinent provisions of the will follows:

"2nd. We, John B. Buck and Henrietta Buck, husband and wife, desire that upon the death of either of us, that all of our property, both real and personal, shall pass to the other, whether husband or wife, to remain their property during the remainder of their life.

"3rd. Upon the death of both of us, we hereby give, devise and bequeath all of our property, both real and personal, as follows:

"One half of estate equally to living brothers and sisters of John B. Buck.

"One half of estate equally to living brothers and sisters of Henrietta Buck.

"4th. If upon the death of both of us, either of us should not have any living brothers and sisters, then we each give, devise and bequeath all of our estate both real and personal, as follows: One half estate to heirs of Deceased brothers and sisters of John B. Buck, and one half of estate to heirs of Deceased brothers and sisters of Henrietta Buck, or either of them."

Ben Buck died on May 20, 1934, and Henrietta, his wife, filed the will for probate in the County Court of Harper County, Oklahoma. It will be observed that under the second sub-division of the will, all of Ben's property was to pass to Henrietta, to remain hers during her lifetime.

That under sub-division 3 of the will, upon the death of both Ben and Henrietta, the property was to go one-half equally between the living brothers and sisters of Ben, and the other one-half to the living brothers and sisters of Henrietta.

In the petition for the probate of this will, Henrietta alleged that independently of the will, she was the sole devisee and legatee, there being no children of their marriage, and that all of the property of the estate was acquired during their married life by their joint industry and, therefore, she became the sole owner thereof. In the probate proceedings notice was given as required by law to all brothers and sisters of Ben Buck, and those in privity with them. They employed three attorneys to represent them in the estate matter. Their attorneys, in their behalf, neither filed claims against the estate, nor did they make any objections to the probate of the will, or to the distribution made of the assets of the estate.

On April 11, 1935, a final decree of distribution was entered and no appeal was taken therefrom, which decree vested all of Ben's property in Henrietta. The decree provides, in part, as follows:

"And it further appearing to the court, that under the last Will and Testament of the said John B. Buck, deceased (who was one and the same as J. B. Buck) all of said property was devised and bequeathed to Henrietta Buck, widow of said deceased, and that the said Henrietta Buck, is the sole and only person entitled to said property, or any interest therein.

"And it further appearing to the court, that all of said property was acquired by the joint industry during coverture, of the said John B. Buck, deceased and Henrietta Buck, his

widow, and that the said John B. Buck left surviving no children or children of deceased children, and that the said Henrietta Buck, widow of John B. Buck, deceased, is for that further reason entitled to sole distribution of said estate.

"It is therefore ordered, adjudged and decreed by the Court, that Henrietta Buck, widow of said deceased John B. Buck, is the sole and only legatee and devisee under the last will and testament of John B. Buck, deceased, was gained by the joint industry of the said John B. Buck and Henrietta Buck, and that the said Henrietta Buck is entitled to all of the property belonging to said estate.

"It is further ordered, adjudged and decreed by the court, that all of the property belonging to the Estate of John B. Buck, deceased, hereinabove described, being money, real estate and personal property, be and the same is hereby transferred, vested, assigned and conveyed to the said Henrietta Buck."

On September 6, 1940, Henrietta Buck executed her will in which she left her entire estate to her brothers and sisters, defendants in the present suit. Henrietta died on December 29, 1946. Her will was admitted to probate and the assets of her estate are now subject to final distribution.

At the present time all brothers and sisters of Ben Buck and Henrietta Buck, are dead. The brothers and sisters of Ben, or those in privity with them, were plaintiffs in the trial court, and the brothers and sisters of Henrietta, and those in privity with them, were defendants in the trial court and hereafter will be referred to as plaintiffs or defendants.

Plaintiffs seek to recover a one-half interest in Henrietta Buck's estate upon the theory that when Ben and Henrietta executed the conjoint will on October 9, 1922, they did so pursuant to an oral agreement under which they each agreed to leave everything to the survivor upon the death of either of them to remain their property during their lifetime, and at their deaths to be equally divided between the plaintiffs and the defendants. Contention is also made

that irrespective of an oral agreement that under the terms of the joint will itself, plaintiffs are entitled to recover from the defendants one-half of the property in the estate of Henrietta Buck.

Under these theories plaintiffs assert that the defendants hold the assets of the estate of Henrietta Buck in trust for plaintiffs, and by way of specific performance pray that they be required to convey to plaintiffs an undivided one-half interest, both in the real and personal property of Henrietta's estate.

To defeat plaintiffs' recovery, defendants, by answer, deny the existence of an oral agreement between Ben and Henrietta, as alleged in plaintiffs' petition; deny that Henrietta received any consideration for the alleged promise, if made, and assert that if there was an oral agreement it was not as alleged by plaintiffs, but was an agreement that if Ben and Henrietta died simultaneously, their property would go one-half to Ben's brothers and sisters and the other half to Henrietta brothers and sisters.

Defendants pleaded that Henrietta died twelve years after Ben's death, and if such an oral agreement was made, which they specifically deny, it became inoperative. They further pleaded that notwithstanding notice of the filing of the conjoint will for probate was served on the defendants, they did not file any claim against said estate and, therefore, are estopped by laches and the Statute of Limitations to assert such claims fourteen years thereafter. Defendants state that the final decree of the County Court of Harper County, Oklahoma, bars plaintiffs recovery herein.

As this is a proceeding in which plaintiffs seek to enforce an alleged oral contract to devise property, plaintiffs must sustain their allegations by proof of the agreement by clear, cogent and convincing evidence and of such a nature as to leave no reasonable doubt of the terms and character of the agreement.

In Pancoast, Adm'r v. Eldridge, 134 Okl. 247, 273 P. 255, and in Paull v. Earlywine, 195 Okl. 486, 159 P.2d 556, 559, this court announced the rule as follows:

"Before a court of equity will specifically enforce an oral contract to de-

vise property, the proof of the contract must be so cogent, clear, and forcible as to leave no reasonable doubt as to its terms and character."

With reference to plaintiffs' contention that the joint will of Ben and Henrietta was made in recognition of certain claims of the defendants against Ben, the proof discloses that Ben and his brothers and sister homesteaded 1,600 acres of land in Meade County, Kansas, in 1882. All of Ben's brothers and his sister returned to Ohio in 1890, Ben remaining upon his homestead land in Kansas. The Ohio brothers were in financial difficulties and made an assignment of their Ohio properties for the benefit of creditors, and at the same time deeded their interest in the Ohio and the Meade County, Kansas land to Ben and Charles Buck. Upon a creditor's suit in Ohio, it was contended that these conveyances made by the Ohio brothers to Ben and Charles Buck, were made without consideration and, therefore, fraudulent as against the creditors. Upon a trial of that issue the court found that the conveyances were made for a valuable consideration and were therefore valid.

On the 27th day of May, 1892, Ben Buck and Henrietta Buck reconveyed the Meade County land back to Charles Buck, and at the same time Ben Buck also executed a bill of sale to Charles Buck, reconveying to him all of the personal property in Meade County, in which the Ohio Bucks claimed ownership.

The assignment for the benefit of creditors which was executed on April 11, 1890, by the Ohio Bucks, does not disclose that they listed as assets any claim against their brother, Ben Buck, nor did they list the Meade County, Kansas land as an asset of their estate. Furthermore, the record discloses that in the disposition of the Buck land in Ohio, the Ohio Bucks acquired Ben's interest therein by purchase for a consideration of $5,200.

Ella Buck Cronley, who instituted the original suit, testified by deposition at great length with reference to their farm in Ohio, and the circumstances under which she and her brothers homesteaded the Meade County, Kansas land. She testified that neither she nor her brothers filed any claim in the estate of Ben Buck or Henrietta Buck, although each of them were served with notice of the filing of the will and the petition for probate.

After the Ohio Bucks received notice of the death of Ben Buck, and the filing of his will for probate, they employed William B. Price, an attorney of Kenton, Ohio to assert their claims against the estate of Ben Buck. After their attorney investigated their claims, he advised his Ohio clients to employ an Oklahoma lawyer to file any claims which they might have against Ben's estate. The Ohio Bucks employed a second lawyer at Kenton, Ohio to investigate their rights to participate in Ben Buck's estate. This attorney came to Oklahoma and made an investigation of the estate and thereafter advised his clients that any claim they had would be stale and probably barred, because they arose some forty-five to fifty years prior to Ben's death.

The evidence with reference to the execution of the will discloses that Ben and Henrietta Buck went to the State Bank of Commerce at Gate, Oklahoma, on Oct. 9, 1922, and requested E. I. Haworth, who was connected with the bank, to prepare their joint will. Mr. Haworth testified that he knew nothing of any contract or agreement the Bucks may have had with Ben Buck's brothers or sister as to any provision to be made in their behalf, and to be incorporated in the will. The subscribing witnesses to the will corroborated the testimony of Mr. Haworth, that there were no statements made by either Ben or Henrietta Buck to the effect that the will was being executed in conformity with any previous agreement between them.

Dr. Dugan and his wife, longstanding friends of Ben and Henrietta Buck, testified that Ben advised them approximately four years after the will was executed that he and Henrietta had made their will, and that the will provided that the surviving one of them would have the property as long as they lived and at their death it was to be divided equally between Ben's people and Henrietta's people. Dr. Dugan stated he did not know what arrangements, if any, Ben and Henrietta had made with reference to the execution of any future wills.

The County Judge of Harper County, Oklahoma, before whom this estate was probated, testified that he had known Ben and Henrietta Buck for many years; that upon the hearing for a final distribution in the estate of Ben Buck, Henrietta testified that the reason she and Ben executed the joint will was because they contemplated taking an automobile trip; and that they desired to make provisions in the will to the effect that if they were simultaneously killed in an automobile wreck that their estates would divest as indicated in the will. He further stated that in the administration of Ben Buck's estate, Henrietta testified that all of the property was jointly acquired during coverture; that no children were born of their union, and that she claimed the property in fee simple.

M. A. Holcomb, an attorney at law, stated he had been the legal advisor of Ben and Henrietta Buck for many years, and upon Ben's death in 1934, he probated Ben's estate. He testified that at no time did either Ben or Henrietta ever suggest that their will executed in 1922, was in conformity with any mutual agreement, nor as to what disposition was to be made of their property if one of them predeceased the other.

■ From an examination of the entire record we find that the trial court's finding to the effect that the conjoint will was made pursuant to an oral agreement and for a good and valuable consideration and, therefore, could not be revoked by Henrietta Buck, is not supported by the evidence and, furthermore, is contrary to the express provisions of our statutory law.

It will be observed that the claims of the Ohio Bucks are based solely upon inferences that they made certain advances or loans to Ben Buck during the years 1883 to 1888. The record, however, is silent as to the nature of these advances or the amounts thereof, other than a statement prepared by George Buck in 1934, wherein he attempted to set out from memory items of several thousand dollars claimed to have been sent out by the Ohio Bucks during 1883 to 1888. Whatever these claims were, it is shown without controversy that no claims were ever filed against the estate of Ben Buck in 1934, or the estate of Henrietta

Buck in 1946. Furthermore, the record disclosed that as late as 1934, some of the Ohio Bucks were requesting financial help from Ben and Henrietta to send their children to college, but these letters make no mention of any indebtedness due them.

We find no merit in plaintiffs' contention that the witnesses, Dr. Dugan, Mrs. Dugan and W. L. Dunaway, testified that Ben or Henrietta stated to them that they made their will in 1922, subject to any oral agreement whatever. The most that their testimony establishes is that some four or five years after the execution of the conjoint will, Ben talked with these witnesses about his will, but made no reference whatsoever as to any agreement made between him and his wife.

Plaintiffs below, and here, contend that the will itself is evidence of the oral agreement between Ben and Henrietta. That contention is predicated upon the premise that the will in and of itself establishes the oral agreement relied upon and, therefore, the agreement is irrevocable and that Henrietta, after Ben's death, could not make another will devising her property to her brothers and sisters. This contention runs counter to the public policy of this state as expressed in its legislative enactment.

Title 84 O.S.1951 § 52, reads as follows:

"A conjoint or mutual will is valid, but it may be revoked by any of the testators in like manner with any other will."

This statute does not say that each of the makers of a conjoint will must consent to its revocation but, on the contrary, says that it may be revoked by any of the testators.

■ A statute in identical form is found in the states of California, and North and South Dakota. The Supreme Court of California, construing the statute in Rolls v. Allen, 1928, 204 Cal. 604, 269 P. 450, 451, states:

"The pivotal questions here presented are, first, whether under the facts the widow could, after the death of her husband, make a valid revocation of their conjoint will; and, second, whether her acceptance of the benefits there-

under for the period stated estopped her from so doing."

That court, answering the question there involved, stated:

"Any person executing a conjoint or mutual will with another does so with notice given by Civ.Code, § 1279, that such a will is subject to revocation.

"Mere concurrent execution of mutual wills with full knowledge of their contents by both testators is not enough to prove a legal obligation to forbear revocation in the absence of a valid contract.

"In order to attribute to a mutual will the quality of irrevocability, there must be indisputable evidence of agreement which is relied on to change its ambulatory nature, and presumptions will not and should not take the place of proof."

The California court, in its opinion says a different conclusion would render the statute meaningless when it declares that a conjoint will may be revoked, for if the mere fact of its joint execution is to be deemed evidence of a contractual intention then all conjoint wills, in the absence of other evidence, must be treated and given effect in equity as irrevocable contracts.

To the same holding is a later case by the California Court in Notten v. Mensing, 1935, 3 Cal.2d 469, 45 P.2d 198.

The South Dakota Court in Beveridge v. Bailey, 1928, 53 S.D. 98, 220 N.W. 462, and the North Dakota Supreme Court in Collins v. Stroup, 71 N.D. 679, 3 N.W.2d 742, follows the rule announced by the California Court under an identical statute as here drawn in question.

In Paull v. Earlywine, supra, we held:

"Any person executing a conjoint or mutual will with another does so with notice given by 84 O.S.1941 § 52 that such will may be revoked by any of the testators in like manner with any other will.

"Mere concurrent execution of mutual wills with full knowledge of their contents by both testators is not enough to prove a legal obligation to forbear

revocation in the absence of a valid contract.

"Mere execution of mutual wills has no tendency to show that there is a contractual obligation to make such wills."

Plaintiffs lay great stress upon the case of Frazier v. Patterson, 243 Ill. 80, 90 N.E. 216, wherein the Illinois Court held that a joint will constituted evidence of an agreement.

We find that other states have followed the Illinois rule but these cases disclose that neither Illinois, nor the other states have a statute which provides that a conjoint will may be revoked by any of the testators in like manner with any other will. Plaintiffs contend, however, that in any event defendants are estopped by conduct, to deny the oral contract relied upon by plaintiffs. To establish the theory of estoppel they refer to the so-called Wright transaction, and the further fact that Henrietta Buck elected to take under the conjoint will, rather than a forced heir. With reference to the Wright transaction, the record discloses that Ben and Henrietta sold a part of their Harper and Beaver County land to Jim Wright, taking back a mortgage for a substantial part of the purchase price. Jim Wright defaulted in payments due and thereafter reconveyed the land to Henrietta Buck in satisfaction of the balance of the purchase price due. M. A. Holcomb, Ben's attorney, testified that it was at his suggestion that the conveyance was made to Henrietta, rather than to Ben. It is upon this transaction that plaintiffs contend that when Henrietta took the title in her own name on June 30, 1931, she was receiving benefits under an oral agreement between Ben and herself under their joint will. We are unable to find any evidence in the record to support that contention; neither do we agree with plaintiffs' contention that Henrietta Buck elected to take under the will, rather than a forced heir.

In her petition to probate Ben Buck's will she pleaded that independently of the will she was entitled to receive all of Ben's property, because all of the assets were acquired by Ben and her during their married life, and by their joint industry.

Under the Worthier Title Doctrine it must be presumed that Henrietta took as a forced heir, rather than under the will. However, plaintiffs contend that Henrietta took under the will and therefore asserts that she and the defendants are estopped from contending that she could revoke the conjoint will. The fallacy of this position is demonstrated by the language of the will itself, as under the will she could only receive a life estate. If she took under the will, the decree would have vested in her a life estate only, but, as we have seen, the decree vested in her a full fee simple title. If Henrietta took under the will as the sole legatee, then it follows that under subdivision 3 of the will that one-half of the estate must go to the living brothers and sisters of Ben and Henrietta, has no application. The law presumes that Henrietta took the Worthier Title which, under the law of succession, she was entitled to. She received no benefit under the conjoint will which at most could have given her a life estate. She elected to exercise her statutory right and took a fee simple title under the laws of succession.

In the case of In re Blaydes' Estate, 202 Okl. 558, 216 P.2d 277, 278, we held:

"In this jurisdiction a husband and wife may not dispose of or otherwise limit by will the amount which the surviving spouse shall receive to less than that which such spouse would be entitled to take under the law of intestate succession.

"A husband and wife cannot, by contract to make a conjoint will, and by the making of such will in pursuance thereto, nullify the provisions of 84 O.S.1941 § 44 known as the 'forced heir statute.'"

A review of the entire record leads us to the conclusion that plaintiffs failed to prove the allegations of the alleged agreement made between Ben and Henrietta Buck by cogent, clear and convincing testimony.

. We are further of the view that the proof fails to establish that the Jim Wright transaction, or the will itself, supports plaintiffs theory of estoppel by conduct. We further find that Henrietta Buck took as a forced heir and not under the will, and that under Title 84 O.S.1951 § 52, she had the right to revoke the conjoint will after the death of her husband.

The judgment is reversed.

JOHNSON, V. C. J., and WELCH, DAVISON and BLACKBIRD, JJ., concur.

WILLIAMS, J., concurs in part and dissents in part.

HALLEY, C. J., and CORN, J., dissent.

WILLIAMS, Justice (concurring in part and dissenting in part).

In the case of Tucker v. Zachary, Okl. Sup., 269 P.2d 773, this court considered along with the other facts and circumstances that Mr. and Mrs. Smith had attempted the execution of a joint will in favor of their foster daughters as *some* evidence of *contract* between themselves to make such a will.

Paragraph 3 of the syllabus of the majority opinion herein I believe to be patently distinguishable from the same numbered paragraph of the court's syllabus in Paull v. Earlywine, 195 Okl. 486, 189 P.2d 556.

Except as hereinafter indicated, I am obliged to concur in the opinion of the majority.

However, I am unable to agree that the so-called "worthier title" doctrine has any application to the case at bar.

The "worthier title" doctrine is in substance that where there is a devise or bequest to heirs or next of kin of what the law would give them if there were no will, they take under the "worthier title" by descent or under the statute, and not under the will, the devise or bequest being regarded in such case as void and ineffectual. To render this rule applicable, however, the share or estate given by the will must be identical in quantity and quality with that given by law. 26 C.J.S., Descent and Distribution, § 44, P. 1046.

We said in Beamer v. Ashby, 204 Okl. 530, 231 P.2d 668,

"We have not had occasion to adopt or reject the 'worthier title' doctrine,

and it is not necessary to do so in this case. In order for this rule to be applicable, the share or estate given by the will must be identical in quantity and quality to that given by law."

The majority opinion very plainly points out that Henrietta, the surviving spouse, did not receive the identical estate under the will that she received under the law. Under the will she received a life estate only, whereas, under the statute of descent and distribution she took the full fee simple title to the property in issue. The estate given by the will not being identical in quantity and quality to that given by law, the "worthier title" doctrine has no application.

To this extent, I therefore respectfully dissent.